UNITED STATES DISTRICT COURT FILED _____ _____ D.C
FOR THE SOUTHERN DISTRICT OF FLORIDA
Miami Division                    98 SEP 22 FM 3: 53

CLERK _____
S.D. OF FLA.-MIAMI

AMPARO CAMPOS, HECTOR CORELLA,)
ANGELA RODRIGUEZ, JOSEFINA   )
LOPEZ, JUANA QUINTERO, SOFIA )
PARDO and AURA CONSUEGRA, on  )
behalf of themselves and all  )
others similarly situated,    )
                              )
        Plaintiffs,           )
                              )
vs.                           )
                              )
IMMIGRATION AND NATURALIZATION)
SERVICE; DORIS MEISSNER,      )
Commissioner, Immigration and )
Naturalization Service; ROBERT)
WALLIS, District Director,     )
Immigration and Naturalization)
Service, Miami; and ELAINE     )
WATSON, Director, Naturaliza- )
tion Unit, Immigration and    )
Naturalization Service, Miami )
                              )
        Defendants.           )
_____)

Case No. **98-2231**

**CIV - GOLD**

CLASS ACTION COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF

*MAGISTRATE JUDGE TURNOFF*

## INTRODUCTION

1.  Plaintiffs are poor, disabled legal permanent residents of the United States who have applied for and are eligible for naturalization but who are unable, solely due to a physical or developmental disability or mental impairment to learn basic English and the fundamentals of United States history and government ("Civics") so as to pass the English and Civics portion of the naturalization exam.  Despite an express Congressional mandate, 8 U.S.C. § 1423(b)(1), as well as implementing regulations and interpretations, providing a "medical waiver" of the English and Civics portion of the naturalization exam for such persons, defendants have maintained



a systematic and Miami District-wide policy of refusing to evaluate requests for medical waivers as required by statute and their own regulations and guidelines, of evaluating all applications for medical waivers in a standardless, totally arbitrary and idiosyncratically capricious manner and of refusing to inform the members of the plaintiff class of the bases for the denial of their requests or even the standards used to deny them. As a result, the plaintiffs and the members of the plaintiff class, all of whom are gravely ill and/or severely handicapped, are deprived of their dream of United States citizenship.

2. Plaintiffs, on behalf of themselves and all others similarly situated, request this Court to issue injunctive relief to compel the defendants to:

(a)   evaluate all pending and future requests for medical waivers of the English and Civics portion of the naturalization examination as required by 8 U.S.C. § 1423(b)(1), 8 C.F.R. §§ 312.1 and 312.2, the implementing guidelines and such uniform standards as are hereafter developed;

(b)   reevaluate all requests for medical waivers of the English and Civics portion of the naturalization examinations which have been denied at any time since March 19, 1997, pursuant to the requirements of 8 U.S.C. § 1423(b)(1), 8 C.F.R. §§ 312.1 and 312.2, the implementing guidelines and such uniform standards as are hereafter developed;

2

(c)  develop standards for the evaluation of the sufficiency of requests for medical waivers of the English and Civics portion of the naturalization examinations which are consistent with 8 U.S.C. § 1423(b)(1), 8 C.F.R. §§ 312.1 and 312.2 and the implementing guidelines;

(d)  publish in the Federal Register and make available to the public the standards utilized by the defendants, including such uniform standards as are hereafter developed, for the evaluation of the sufficiency of requests for medical waivers of the English and Civics portion of the naturalization examinations;

(e)  provide notice of the reasons for the rejection of the medical waiver sufficient to allow the applicant to understand the bases for the rejection and, if possible, to correct them, to all applicants for naturalization whose requests for medical waivers of the English and Civics portion of the naturalization examinations have been rejected.

Plaintiffs also seek corresponding declaratory relief and attorneys' fees and costs as permitted by the Equal Access to Justice Act.

<u>JURISDICTION</u>

3.  Jurisdiction is conferred on the Court by  28 U.S.C. § 1361, 28 U.S.C. § 1331(a) and 5 U.S.C. §§ 701-706.

4.  This Court also has jurisdiction to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Fed. R. Civ. P. 57 and 65.

VENUE

5.  Venue in the Southern District of Florida is proper pursuant to Title 28 U.S.C. § 1391(e) in that Defendants Robert Wallis and Elaine Watson are residents of the Southern District of Florida, a substantial part of the activities complained of occurred in the Southern District of Florida and all of the named plaintiffs reside in this judicial district.

PARTIES

Plaintiffs

6.  Plaintiff AMPARO CAMPOS is an eighty-two (82) year old legal permanent resident of Dade County, Florida who suffers from dementia, cognitive disorder, recurrent major depression and generalized anxiety disorder.

7.  Plaintiff HECTOR CORELLA is a ninety-five (95) year old legal permanent resident of Dade County, Florida who suffers from senile dementia, organic brain syndrome and arterial hypertension.

8.  Plaintiff ANGELA RODRIGUEZ is a seventy-eight (78) year old legal permanent resident of Dade County, Florida who suffers from organic brain syndrome and arterial hypertension.

9.  Plaintiff JOSEFINA LOPEZ is an eighty-four (84) year old legal permanent resident of Dade County, Florida who suffers from

4

aggressive cardiac arrhythmia, arterial fibrillation and sick sinus syndrome affecting the sinus node of the heart.

10.   Plaintiff JUANA QUINTERO is a sixty-two (62) year old legal permanent resident of Dade County, Florida who suffers from dementia, chronic hypertension and recurrent major depression.

11.   Plaintiff SOFIA PARDO is a seventy-seven (77) year old legal permanent resident of Dade County, Florida who suffers from dementia.

12.   Plaintiff AURA CONSUEGRA is an eighty-six (86) year old legal permanent resident of Dade County, Florida who suffers from cerebral dementia, organic brain syndrome, arteriosclerosis and a brain tumor.

<u>Defendants</u>

13.   Defendant IMMIGRATION AND NATURALIZATION SERVICE ("INS") is the agency of the United States government charged with the processing and approval of all naturalization petitions and, as part of its responsibilities, reviews, approves or denies all requests for medical waiver of the English and/or Civics section of the naturalization exam.  As such, the agency is responsible for the acts challenged in this action.

14.   Defendant DORIS MEISSNER is the Commissioner of the INS and its Chief Executive Officer.  As such, she is responsible for the administration of the Immigration and Naturalization Act, including its disability waiver provision, 8 U.S.C. § 1423(b)(1), and for the promulgation of regulations, policies, procedures and guidelines concerning the disability waiver.

15.  Defendant ROBERT WALLIS is the District Director of the Miami, Florida District Office of the INS, and its Chief Administrative Officer.  The Miami, Florida District Office is responsible for making the determination to grant or deny all naturalization applications, including the decision to grant or deny all requests for medical waiver, filed by persons residing in the State of Florida.

16.  Defendant ELAINE WATSON is the Director of the Naturalization Unit of the Miami, Florida District Office of the INS.  She is responsible for the administration of the naturalization program in the Miami District office.

<u>CLASS ACTION ALLEGATIONS</u>

17.  Pursuant to Fed. R. Civ. P. 23(a) and 23(b)(1) and (b)(2), plaintiffs bring this action on behalf of themselves and all other similarly-situated persons.  The plaintiff class consists of:

> All persons within the Miami District of the Immigration and  Naturalization Service who have properly applied, or will apply in the future, for naturalization under 8 U.S.C. § 1445 who have also had pending at any time since March 19, 1997, a request for a waiver of either or both of the naturalization requirements that they demonstrate an understanding of the English language and that they demonstrate a knowledge and understanding of the fundamentals of the history, and of the principles and form of government of the United States, because of a medically determinable physical or mental impairment and whose request for waiver is now pending, will be filed in the future, or has been rejected by the INS.

18.  The class is so numerous that joinder of all members is impracticable.  Plaintiffs allege on information and belief that, as a result of the defendants  illegal policies as alleged

herein, hundreds of similarly-situated naturalization applicants have had their requests for medical waiver of the English or Civics portion of the naturalization examination illegally denied.   In addition, many hundreds of persons who have made similar requests for medical waiver and whose requests are pending, or will be filed in the future, are threatened with being subjected to the same illegal policies.

19.   There are questions of law and fact common to the class:

A.   Common questions of law include whether Defendants' current practices and policies in the Miami District for evaluating requests for medical waiver of the English language and Civics portion of the naturalization exam violate 8 U.S.C. § 1423(b)(1), 8 C.F.R. §§ 312.1 and 312.2, 5 U.S.C. § 701 et seq., 5 U.S.C. § 552, 5 U.S.C. §553, 5 U.S.C. § 555(e) and the Fifth Amendment to the United States Constitution.

B.   Common questions of fact include whether Defendants maintain and have maintained a policy and practice in the Miami District:

1.   of rejecting medical waiver requests in violation of the policies and procedures set forth in 8 C.F.R. §§ 312.1 and 312.2 and the implementing guidelines; and

2.   of rejecting medical waiver requests arbitrarily and capriciously, in violation of the

policies and procedures set forth in 8 C.F.R. §§ 312.1
and 312.2 and the implementing guidelines, utilizing no
standards or secret standards, without providing the
applicants any notice of the standards employed or of
the reason for rejection.

20.   The claims of the individual named plaintiffs are
typical of the claims of the class because questions of law and
fact exist that are common to all.   They seek a determination by
this Court of whether the Defendants' current practices and
policies in the Miami District for evaluating requests for
medical waiver of the English language and Civics portion of the
naturalization exam violate 8 U.S.C. § 1423(b)(1), 8 C.F.R. §§
312.1 and 312.2, 5 U.S.C. § 701 et seq., 5 U.S.C. § 552, 5 U.S.C.
§553, 5 U.S.C. § 555(e) and the Fifth Amendment to the United
States Constitution.   Plaintiffs know of no conflict between
their interests and those of the class they seek to represent.
In defending their own rights, the individual plaintiffs will
defend the rights of all proposed class members.

21.   The plaintiffs are adequate representatives of the
class because they have been adversely affected by the practices
of the defendants which have similarly impacted all members of
the class, i.e., defendants' practice of rejecting medical waiver
requests in violation of the policies and procedures set forth in
8 U.S.C. § 1423(b)(1), 8 C.F.R. §§ 312.1 and 312.2 and the
implementing guidelines and of rejecting medical waiver requests
arbitrarily and capriciously, utilizing no standards or secret

8

standards, without providing the applicants any notice of the standards employed or the reason for rejection.

22.  Plaintiffs' attorneys from the Florida Justice Institute, Inc., Florida Immigrant Advocacy Center, Inc. and Florida Legal Services, Inc., are experienced attorneys who have the resources to represent the class as a whole.  In addition, plaintiffs will fairly and adequately protect the interests of the class they seek to represent.

23.  Defendants have acted or failed to act on grounds generally applicable to each member of the class, in that they have rejected medical waiver requests in violation of the policies and procedures set forth in 8 C.F.R. §§ 312.1 and 312.2 and the implementing guidelines and rejected medical waiver requests arbitrarily and capriciously, utilizing no standards or secret standards, without providing the applicants any notice of the standards employed or the reason for rejection, thus making appropriate the grant of injunctive relief to compel defendants to:

> (a)  evaluate all pending and future requests for medical waivers of the English and Civics portion of the naturalization examination as required by 8 U.S.C. § 1423(b)(1), 8 C.F.R. §§ 312.1 and 312.2, the implementing guidelines and such uniform standards as are hereafter developed;
>
> (b)  reevaluate all requests for medical waivers of the English and Civics portion of the naturalization

examinations which have been denied at any time since March 19, 1997, pursuant to the requirements of 8 U.S.C. § 1423(b)(1), 8 C.F.R. §§ 312.1 and 312.2, the implementing guidelines and such uniform standards as are hereafter developed;

(c) develop standards for the evaluation of the sufficiency of requests for medical waivers of the English and Civics portion of the naturalization examinations which are consistent with 8 U.S.C. § 1423(b)(1), 8 C.F.R. §§ 312.1 and 312.2 and the implementing guidelines;

(d) publish in the Federal Register and make available to the public the standards utilized by the defendants, including such uniform standards as are hereafter developed, for the evaluation of the sufficiency of requests for medical waivers of the English and Civics portion of the naturalization examinations;

(e) provide notice of the reasons for the rejection of the medical waiver sufficient to allow the applicant to understand the bases for the rejection and, if possible, to correct them, to all applicants for naturalization whose requests for medical waivers of the English and Civics portion of the naturalization examinations have been rejected.

24.  The conduct of defendants described above has further made appropriate corresponding declaratory relief regarding the class as a whole.

THE STATUTORY AND REGULATORY SCHEME OF THE NATURALIZATION PROCESS

25.  Congress has created a comprehensive statutory scheme which guarantees that eligible applicants will be naturalized in a prompt and dignified fashion while guaranteeing the integrity of the naturalization process.  As part of that process Congress has required that an applicant for naturalization must demonstrate "an understanding of the English language, including an ability to read, write and speak words in ordinary usage..." 8 U.S.C. § 1423(a)(1), and a "knowledge and understanding of the fundamentals of the history, and of the principles and form of government of the United States" 8 U.S.C. § 1423(a)(2).  In order to lessen the impact of those requirements on otherwise qualified, deserving immigrants, and to avoid discrimination against such persons on the basis of their disabilities, Congress also provided that the "English language" and "history and civics" requirements "shall not apply to any person who is unable because of physical or developmental disability or mental impairment to comply therewith."  8 U.S.C. § 1423(b)(1).  This exemption from the  "English language" and "history and civics" requirements is termed the "medical waiver exemption".

26.  In response to the statutory mandate, defendants have established a comprehensive scheme of "medical waiver exemption" regulations, 8 C.F.R. § 312 et seq., and interpretive policies.

The fundamental policy of these regulations and policies is that the medical determination as to the applicants' inability to comply with the  "English language" and "history and civics" requirements be "attested to" by a qualified medical professional and that the role of the defendants' officers is to simply to ensure the veracity of that attestation.

27.   The medical professional's determination is communicated to defendants by means of an N-648 form, which serves as both an application for a medical waiver exemption and an attestation by the medical professional to INS as to "the origin, nature and extent of the medical condition."

28.   Fundamental to the role of the defendants' officers reviewing the veracity of the medical waiver requests is that they "are not medical professionals, advocates, or social workers and should not place themselves in the position of attempting to second guess the medical evaluation of the qualified medical professional certifying a disability exception on the N-648.   Nor should the officers place themselves in the position of being a medical professional and thereby denying the existence of a disability."  Supplemental Policy Guidance 3/12/97, p. 7.

29.   The regulations provide that, should the defendants' officer doubt the veracity of the N-648 attestation he/she should, except in the case of outright fraud, "refer the applicant to another authorized medical source for a supplemental disability examination."  8 C.F.R. §312.2(b)(2).   The instructions also recognize the significant burden this puts upon

a poor disabled applicant.  Thus, prior to any referral, the
defendants' officer is required to undertake to resolve his/her
concerns in favor of the applicant without the necessity of a
supplemental disability evaluation.  Specifically, the officer
"should attempt to reach the medical professional who completed
the N-648 to answer any questions" the officer may have.  If that
consultation is unsuccessful, the officer is to consider whether
"a production of supplemental records from the applicant's
medical file would satisfy the concerns."  Additionally, "[i]f
the applicant has been declared disabled by another state or
federal government agency, the [officer] should attempt to make
contact with this agency" to clarify any questions which the
officer may have.  Only if these strategies fail is the officer
to then seek authorization from his supervisor to require an
additional attestation.  Supplemental Policy Guidance 3/12/97.

> Officers are instructed to use <u>extreme restraint</u> in
> exercising these options and should only do so when doubts
> remain after the steps outlined...have been
> completed...<u>Officers should always remember that they are
> responsible for determining the eligibility for
> naturalization not for making or rendering a medical
> determination.</u>

Supplemental Policy Guidance 3/12/97.

<u>THE CHALLENGED PRACTICES</u>

30.  The defendants, with respect to applicants for
naturalization in the Miami District, maintain a practice and
procedure for evaluating requests for N-648 Requests for Medical
Waiver, that violate every tenet of the aforementioned
comprehensive statutory and regulatory scheme.  Specifically,

defendants, with respect to applicants for naturalization in the Miami District, as a matter of practice and policy:

    a.  Reject and deny properly completed N-648 Requests for Medical Waiver by "second guessing" the medical determination of the medical professional and substituting their own medical determination for the medical determination of the medical professional, without having the applicant evaluated by an INS medical doctor or clinical psychologist;

    b.  Reject and deny properly completed N-648 Requests for Medical Waiver despite a completed attestation by a medical professional as to "the origin, nature and extent of the medical condition as it relates to the disability exceptions";

    c.  Reject and deny properly completed N-648 Requests for Medical Waiver based on questions which they have regarding the N-648:

        (i) without attempting to reach the medical professional who completed the N-648 to answer any questions the DAO may have regarding the certification;

        (ii) for applicants who have been declared disabled by another state or federal government agency, without attempting to make contact with the agency to see if any information can be gained

to clarify the questions which the officer has about the medical professional's certification;

(iii) without ever requesting from the medical professional who made the original disability certification a production of supplemental records from the applicant's medical files;

(iv) without ever requesting at any time a second N-648 from an "authorized medical professional other than the medical professional that completed the first certification;"

(v) without ever having the applicant evaluated at any time by an INS medical doctor or clinical psychologist.

d. Reject and deny properly completed N-648 Requests for Medical Waiver utilizing wholly arbitrary and capricious standards which vary from officer to officer, from supervisor to supervisor, and from determination to determination;

e. Reject and deny properly completed N-648 Requests for Medical Waiver based on secret standards which have never been published in the Federal Register and which they refuse to provide to the public;

f. Reject and deny properly completed N-648 Requests for Medical Waiver without ever providing the rejected applicants with a meaningful notice of the

basis for the rejection, the standards employed or the means to cure the deficiencies.

FACTUAL ALLEGATIONS

a.  Facts as to Amparo Campos

31.  Amparo Campos is 82 years old and disabled.

32.  She and her husband tried to flee Cuba for almost twenty years before they obtained visas in 1991.  Since they were not communist and had not participated in the revolution they lived under constant surveillance and fear in Cuba.

33.  During those dark years in Cuba awaiting the opportunity to immigrate to the United States, Amparo Campos and her husband were sustained by the dream of becoming citizens of the United States.  They sought to apply at the first opportunity, and as soon as they had completed the required five years of legal residency, they proudly applied for United States citizenship in 1996.

34.  By that time Amparo Campos was eighty years old and suffered from disabilities which prevented her from learning English and taking the Civics examination.

35.  She was also unable to work, without resources and therefore dependent on monthly Supplemental Security Income ("SSI") benefits to survive.  She knew that in 1996 Congress changed the law to prevent her from continuing to receive these benefits unless she became a United States citizen.  She therefore felt that her application was extremely urgent.

36.  Ms. Campos applied for a medical waiver to excuse her from the English and Civics requirements of the naturalization examination.  She based her request on the fact that she suffers from dementia as well as acute hypertension, cardiac arrhythmia and peripheral vascular insufficiency which restrict the flow of blood to her brain, and anxiety disorder and depression.  These disabilities prevent her from learning English and Civics.

37.  First, Ms. Campos had a form completed by an INS-approved civil surgeon which attested to her diagnoses and the fact that they impaired her ability to learn.  However, defendants rejected this form in the fall of 1997 on the basis that it was "outdated."

38.  Ms. Campos promptly went to her regular treating medical doctor, and he properly completed an N-648 form attesting to the fact that Ms. Campos was his patient, her diagnoses and the fact that she has impaired memory as a result of her disabilities.  Ms. Campos presented this form to the INS at her December, 1997 interview.

39.  The INS officer who examined her refused to accept the form and would not tell her why it was rejected.

40.  Ms. Campos was scheduled for her final naturalization exam in January, 1998.  At that examination, she presented yet another N-648 form.  This one was completed by a psychiatrist. On the form the psychiatrist stated:

> This patient has a psychiatric history for the past 16 years without any psychiatric hospitalizations. Currently she presents with diagnosis of 1) major depression, recurrent moderate 296.32, 2) generalized

anxiety 300.02 and 3) cognitive disorder 294.9.  With
respect to the patient's diagnosis of cognitive
disorder, the patient reports increasing forgetfulness,
i.e. forgetting appointments and getting lost on the
streets if left alone.  The patient tested on the
Folstein, scoring an 18 from 30 possible points.  This
score indicates that the patient has dementia.  Poor
cognition is symptom of dementia.  Dementia cannot be
cured and only progressively gets worse.  Due to this
diagnosis she is unable to retain anything studied for
any length of time.

41.  Despite her well-documented disabilities and the
certification of three different doctors that she could not pass
the English and Civics examination due to her disabilities, the
defendants denied Ms. Campos' medical waiver request.  She was
then denied citizenship because she could not speak English.

42.  In denying Ms. Campos' request for a waiver, defendants
made no attempt to reach any of the three medical professionals
who had certified that her disabilities prevented her learning
English and Civics.  Nor did they ever request from any of the
medical professionals who made the disability certifications a
production of supplemental records from the applicant's medical
files.  Neither did they have Ms. Campos examined by any other
medical professional.  Rather, the defendants and their officers
simply "second guessed" the medical determination of the three
medical professionals and substituted their own medical
determination for the medical determination of the medical
professionals.

43.  Ms. Campos' properly completed N-648 Requests for
Medical Waiver were evaluated using wholly arbitrary and
capricious standards which defendants have never published in the

Federal Register or provided to her, her family, her representatives or members of the public. Never have the defendants provided Amparo Campos or her family with a meaningful notice of the bases for her rejection, the standards employed or the means to cure the deficiencies.

44. Ms. Campos still wants to become a United States citizen. However, on her meager income she cannot afford to reapply or appeal. Nor does she know how to satisfy the INS requirements for establishing the fact that her disabilities prevent her from learning English and Civics.

<u>b. Facts as to Hector Corella</u>

45. Hector Corella is presently 95 years old and disabled. He came to the United States from Cuba in 1989.

46. Mr. Corella has wanted very much to become a United States citizen from the moment he arrived. In 1995, as soon as he had completed his required five years of legal residence, both he and his wife applied to become citizens.

47. Mr. Corella's wife applied for a medical waiver of the English and Civics portion of the naturalization examination from defendants' Miami District Office because she suffered from Alzheimer's disease. She had memory loss and overall deterioration of her mental abilities. In addition, she was confined to bed and dependent upon a feeding tube in her stomach.

48. Her application for a medical waiver was denied in 1996. She did not receive any notification as to the reasons for the denial. She appealed and provided another medical waiver

form which was completed by another doctor.  However, Mr.
Corella's wife passed away in July, 1997 without ever receiving a
decision regarding her second medical waiver request and without
realizing her dream of becoming a citizen of the United States.

49.  Mr. Corella also applied for a medical waiver.  His
request for a medical waiver was based on his suffering from
organic brain syndrome and senile dementia as well as arterial
hypertension which reduces the blood supply to his brain.  His
doctor completed the required form stating that "Mr. Corrella's
dementia prevents him from demonstrating knowledge of basic
English language skills and U.S. history and civics."

50.  Despite these disabilities and the doctor's
certification, the defendants denied Mr. Corella's medical waiver
request.  Prior to denying him, the defendants made no attempt to
reach the medical professional who completed the N-648 to answer
any questions the defendants or their officers may have had
regarding the certification, nor did they ever request from the
medical professional who made the original disability
certification a production of supplemental records from the
applicant's medical files.  Rather, the defendants and their
officers simply "second guessed" the medical determination of the
medical professional and substituted their own medical
determination for the medical determination of the medical
professional without ever conducting their own medical or
psychological examination of Mr. Corella.

51.  Mr. Corella's properly completed N-648 Requests for
Medical Waiver was evaluated using wholly arbitrary and
capricious standards which defendants have never published in the
Federal Register or provided to him, his family, his
representatives or members of the public.  Never have the
defendants provided him or his family with a meaningful notice of
the bases for his rejection, the standards employed or the means
to cure the deficiencies.

52.  Mr. Corella desperately wants to be a United States
citizen and he reapplied in February or March, 1998.  He has
again requested a medical waiver from the defendants.  He is
fearful that he may die before he gets a chance to realize his
wish to be a U.S. citizen.

c.  Facts as to Angela Rodriguez

53.  Angela Rodriguez is 78 years old and is disabled.  She
came to the United States from Cuba in 1992 and at that time she
became a Legal Permanent Resident.

54.  As soon as Ms. Rodriguez completed her five years of
legal residency and was able to apply for citizenship, she did
so.  She submitted her naturalization application to defendants
in their Miami District Office in February 1997.  She accompanied
the application with a request for a medical waiver from the
English and Civics portion of the examination and attached a
letter from her family doctor describing that she was suffering
from organic brain syndrome and arterial hypertension which cause

memory loss, poor concentration and a decline in her mental functioning.

55.  At her naturalization interview with defendants in June, 1998, she also presented to defendants' officer an N-648 form completed by her regular treating doctor, Dr. Miguel A. Mier. Dr. Mier stated on the form that:

> The complex combination of ailments above described have resulted in a progressive deterioration of her cognitive functions with a decline in functional level[,] poor memory and poor concentration. Though she is aware of her surroundings and is still able to express herself with limited clarity, she requires constant supervision and is unable to care for herself. Under these conditions, this patient's potential for learning complicated new material such as a new language and/or replying to an interrogatory in a foreign language are practically nil....
> Based on the above, it is my professional Medical opinion, that Angela Rodriguez is unable to learn even basic English, let alone U.S. Civics or history, and that it is no fault of her own that she can not comprehend an examination to demonstrate basic knowledge of the English language.

56.  The defendants' officer at Ms. Rodriguez' interview reviewed her papers, including the N-648 form, asked her a few questions in Spanish and after leaving the office for a few minutes returned and informed Ms. Rodriguez that her medical waiver was denied.

57.  Prior to denying her medical waiver request, the defendants made no attempt to reach the medical professional who completed the N-648 to answer any questions the defendants or their officers may have had regarding the certification, nor did they ever request from the medical professional who made the original disability certification a production of supplemental records from the applicant's medical files.  Rather the

defendants and their officers simply "second guessed" the medical determination of the medical professional and substituted their own medical determination for the medical determination of the medical professional without ever conducting their own medical or psychological examination of Ms. Rodriguez.

58. Ms. Rodriguez believes that her properly completed N-648 Request for Medical Waiver was evaluated using wholly arbitrary and capricious standards which defendants have never published in the Federal Register nor provided to her, her family, her representatives or members of the public. Never have the defendants provided her or her family with a meaningful notice of the basis for her rejection, the standards employed or the means to cure the deficiencies.

59. Ms. Rodriguez received a form letter from defendants dated June 5, 1998 stating that they would not accept her N-648. The form further demonstrated the absurdity of defendants' process. Every deficiency listed on the form letter was checked. Included among the listed deficiencies were: 1) "Identify the applicant on the medical certification," even though Ms. Rodriguez's full name, alien number and social security number were clearly on the certification; 2) "Identify the condition clearly and how it is related to her capacity to learn," even though this information already appeared on the form; and 3) "Establish your qualifications to make this medical certification," even though this information already appeared on the form.

60.   Such notification is absolutely meaningless in providing a basis for the rejection of her medical waiver. Neither Ms. Rodriguez nor her doctor are able to determine from this form the actual deficiencies of her medical waiver request or what was needed to correct it.   Nevertheless, her doctor, Dr Mier, prepared yet another N-648 form which Ms. Rodriguez submitted in July, 1998.

61.   Ostensibly in response to this form, Ms. Rodriguez received a letter from INS dated August 25, 1998, again denying her medical waiver without explanation.   Prior to this second denial, defendants made no attempt to contact the medical professional who submitted the attestation, request additional documents or conduct any further inquiry.   Again defendants and their officers simply "second guessed" the medical determination of the medical professional, evaluating it based on wholly arbitrary and capricious secret standards.   At no time did Ms. Rodriguez receive any notification as to the basis for the denial or the standards used.

62.   Ms. Rodriguez is currently scheduled for a final interview and examination on September 25, 1998.   She cannot pass the English and civics examination due to her disabilities.

### d.   Facts as to Josefina Lopez

63.   Plaintiff Josefina Lopez is 84 years old and is disabled.   She came to the United States in 1988 when she was 74 years old.   Her husband died in Cuba in 1972 where he had been held as a political prisoner for eight years.

64.   Ms. Lopez applied for United States citizenship in March, 1997 at the age of 83.  At her INS interview on August 25, 1998 her INS Accredited Representative gave the defendants' officer a properly completed N-648.  The form states that Ms. Lopez suffers from a number of complicated cardiac and circulatory insufficiency abnormalities which affect normal blood flow to all parts of the body, including major organs and the brain, and that as a result of the conditions and the medication prescribed for them, Ms. Lopez is prone to lethargy and syncopal episodes with marked diminution of cognitive functions: reasoning ability, judgment and memory.  The form also explains that Ms. Lopez' prescribed medication can also produce severe physiological and psychological side effects, including but not limited to: confusion, restlessness, agitation, tiredness and unusual weakness, loss of appetite, nausea, vomiting, changes in heart rhythms and changes in vision.

65.   This N-648 form was prepared by Ms. Lopez' regular treating doctor, who is board-certified in internal medicine. Her doctor further certified on the form that, in his professional medical opinion Ms. Lopez is not capable of learning and retaining new material at this stage of her ailment and therefore is unable to learn written or spoken English.

66.   At Ms. Lopez' interview, defendants' officer took her N-648 form away with him and returned after about ten minutes. He then told Ms. Lopez and her representative that her N-648 had been rejected.  Defendants' officer further indicated that if Ms.

25

Lopez wanted to obtain a waiver she would have to return with a different N-648 that provided an "accurate assessment" of her disability.

67.   Prior to denying her medical waiver request, the defendants made no attempt to reach the medical professional who completed the N-648 to answer any questions the defendants or their officers may have had regarding the certification, nor did they ever request from the medical professional who made the original disability certification a production of supplemental records from the applicant's medical files.  Rather the defendants and their officers simply "second guessed" the medical determination of the medical professional and substituted their own medical determination for the medical determination of the medical professional without ever conducting their own medical or psychological examination of Ms. Lopez.

68.   Ms. Lopez' properly completed N-648 Request for Medical Waiver was evaluated using wholly arbitrary and capricious standards which defendants have never published in the Federal Register nor provided to her, her family, her representatives or members of the public.  Never have the defendants provided her or her family with a meaningful notice of the basis for her rejection, the standards employed or the means to cure the deficiencies, and indeed, Ms. Lopez and her representative are so confused by defendants' request for an N-648 that provides an "accurate assessment" of the disability, that they are unable to comply with the requirement.

69.   Defendants have now sent Ms. Lopez a notice stating that her "application for naturalization and request for medical exception has been reviewed and the **medical exception has not been accepted**.  You will be required to satisfy the English and Civics requirements of the INA."  Her final interview is presently scheduled for September 28.  She cannot pass the English and civics examination due to her disabilities and does not know how to provide any more information that will satisfy defendants' arbitrary and idiosyncratic waiver requirements.

### e.  Facts as to Juana Quintero

70.   Plaintiff Juana Quintero is 62 years old and is disabled.  She came to the United States from Cuba in 1990 to be with her son who is a United States citizen.  Ms. Quintero suffers from chronic hypertension which restricts her brain's blood supply, recurrent major depression and progressive dementia.  She also has severe arthritis and must walk with a cane or walker.

71.   Because of her disabilities, Ms. Quintero is unable to work and is qualified for Supplemental Security Income ("SSI") on which she depends to be able to live.  Ms. Quintero also used to receive federal food stamps, which were necessary for her to have a proper diet, but these were cut off in the summer of 1997 by a new federal law which barred such assistance to non-citizens.  Ms. Quintero has had great difficulty buying enough food since then.

72.   Ms. Quintero learned in the summer of 1996 that
Congress had passed a new law designed to "encourage" people her
to become United States citizens by terminating their SSI and
food stamps if they did not naturalize.  She applied for
citizenship in September, 1996.

73.   Because of her disabilities, Ms. Quintero knew that she
would not be able to pass the English and civics requirements to
become a U.S. citizen.  With her 1996 application, she submitted
a form requesting a waiver of these requirements filled out by an
INS-approved civil surgeon.  The form stated that she suffers
from brain dysfunction with memory impairment related to major
depression and use of medication.  The civil surgeon's opinion
expressed on the form was that Ms. Quintero has major cognitive
and memory problems that render her unable to recall new
information.

74.   Ms. Quintero's first interview for citizenship was not
scheduled until April 27, 1998.  Because the INS had created the
N-648 forms by that time, she also had one of those forms filled
out by her treating doctor and she brought that form to the
interview.

75.   At her interview, defendants' officer reviewed the N-
648 form and went to see a supervisor.  When the officer
returned, she informed Ms. Quintero that her illnesses did not
qualify for a waiver.

76.   At that time, defendants' officer and supervisor
informed Ms. Quintero that her doctor had made a slight error in

28

writing one of the diagnosis codes on the N-648.  Instead of the form stating "Major Depression, recurrent (ICD 296.3)" it stated "Major Depression, recurrent (ICD 296.23)."  Defendants' supervisor stated that because of this one error, defendants would not accept the form, the other diagnoses (including dementia) or the civil surgeon's waiver form as evidence of Ms. Quintero's disabilities.

77.  Defendants' officer then attempted to speak to Ms. Quintero in English but since she could not understand the language, she could not respond.  The officer then gave her a form stating that she did not pass for failure to demonstrate knowledge of the English language.

78.  Ms. Quintero's second exam was scheduled for June 29, 1998.  At that interview, she submitted another N-648, this time each code was perfectly prepared and correct.

79.  Nevertheless, defendants' officer rejected the N-648, this time stating that the illnesses were not "valid" and that the codes do not qualify for exemption from testing.  Ms. Quintero was again given a form stating that she was denied U.S. citizenship because at the examinations on April 27, 1998 and June 29, 1998 she failed to demonstrate knowledge of the English language.

80.  Defendants informed plaintiff Quintero that she could receive no more interviews on her application, and that her only recourse was to appeal the decision or reapply for citizenship and start the entire process over.  She could not afford the fees

to do either, particularly since she has now lost her food stamps because she is not a U.S. citizen.

81.  Prior to denying her medical waiver requests, the defendants made no attempt to reach the medical professionals who completed the N-648s or the INS-approved civil surgeon to answer any questions the defendants or their officers may have had regarding the certifications, nor did they ever request from the medical professionals who made the disability certifications a production of supplemental records from the applicant's medical files.  Rather the defendants and their officers simply "second guessed" the medical determination of the medical professionals and substituted their own medical determination for the medical determination of the medical professionals without ever conducting their own medical or psychological examination of Ms. Quintero.

82.  Ms. Quintero's properly completed N-648 Requests for Medical Waiver and her civil surgeon waiver form were evaluated using wholly arbitrary and capricious standards which defendants have never published in the Federal Register nor provided to her, her family, her representatives or members of the public.  Never have the defendants provided her or her family with a meaningful notice of the basis for her rejection, the standards employed or the means to cure the deficiencies.

### f.  Facts as to Sofia Pardo

83.  Plaintiff Sofia Pardo is 77 years old and is disabled.

30

84.   She immigrated from Colombia with her daughter and she became a permanent legal resident in 1988.

85.   Like Ms. Quintero, Ms. Pardo applied for citizenship in 1996 because of changes in federal welfare laws.  She was afraid of losing the SSI benefits and food stamps on which she depends to survive.

86.   Ms. Pardo studied diligently in an effort to learn English, history and civics, but she was unable to retain any of the information or to learn the English language due to her disabilities.

87.   In January, 1998 Ms. Pardo turned in a waiver request completed by an INS-approved civil surgeon who was a neurologist. Defendants refused to accept this waiver request, informing Ms. Pardo that it had "expired."

88.   In April, 1998 Ms. Pardo returned to the INS for an interview and brought with her a properly completed N-648 form prepared by a psychiatrist.  The form stated that Ms. Pardo suffered from impaired cognition, dementia NOS, and that her mental status exam score was 15.  Defendants denied this request for a waiver and examined Ms. Pardo in English.  When she could not respond, defendants denied her application for citizenship.

89.   Prior to denying her medical waiver requests, the defendants made no attempt to reach the medical professionals who completed the N-648 or the INS-approved civil surgeon form to answer any questions the defendants or their officers may have had regarding the certifications, nor did they ever request from

31

the medical professionals who made the disability certifications a production of supplemental records from the applicant's medical files.  Rather the defendants and their officers simply "second guessed" the medical determination of the medical professionals and substituted their own medical determination for the medical determination of the medical professionals without ever conducting their own medical examination of Ms. Pardo.

90.  Ms. Pardo's properly completed N-648 Requests for Medical Waiver and her civil surgeon waiver form were evaluated using wholly arbitrary and capricious standards which defendants have never published in the Federal Register nor provided to her, her family, her representatives or members of the public.  Never have the defendants provided her or her family with a meaningful notice of the basis for her rejection, the standards employed or the means to cure the deficiencies.

### g. Facts as to Aura Consuegra

91.  Ms. Aura Consuegra is 86 years old.  She came to the United States from Colombia to live in 1987 and became a permanent legal resident.  She first applied to become a citizen in February, 1995.

92.  She applied for a waiver of the English and civics examination based on her disabilities.  At her initial naturalization interview, she submitted an attestation as to her disability from an INS-approved civil surgeon, Maria E. Milanes, M.D., who stated on the form that she had cerebral dementia, organic brain syndrome, atherosclerosis and memory loss.  The

32

interviewer told her that since she did not speak English, she could not be examined and denied both her request for medical waiver and her naturalization application.

93. She applied again in March, 1997 and again paid the $95.00 and again requested a medical waiver. In support, she submitted two attestations. Her doctor, Raul Carballosa, who is a board-certified neurologist, certified that she had fixed multiple brain lesions, a brain tumor and severe memory difficulty, and attached several medical reports, including a radiologist report and a hospital discharge summary.

94. In May, 1998 she had a naturalization interview with the defendants and their officers at the Miami District Office. Her N-648 was again rejected and she was again denied citizenship because she could not speak English.

95. Ms. Consuegra's medical waiver was denied by defendants despite her submission of two completed attestations by medical professionals as to "the origin, nature and extent of the medical condition as it relates to the disability exceptions". Moreover, prior to denying her, the defendants made no attempt to reach the medical professionals who completed the N-648 to answer any questions the defendants or their officers may have had regarding the certification, nor did they ever request from the medical professionals who made the disability certifications a production of supplemental records from the applicant's medical files. Rather the defendants and their officers simply "second guessed" the medical determination of the medical professional and

33

substituted their own medical determination for the medical determination of the medical professional without conducting a medical or psychological examination of their own.

96.  Ms. Consuegra believes that her properly completed N-648 Requests for Medical Waiver were evaluated using wholly arbitrary and capricious standards which defendants have never published in the Federal Register nor provided to her, her family, her representatives or members of the public.  Never have the defendants provided her or her family with a meaningful notice of the basis for her rejection, the standards employed or the means to cure the deficiencies.

97.  Ms. Consuegra has since filed an appeal.  However, she has been informed that she cannot expect any consideration of her appeal for at least six months.  Furthermore, plaintiffs are informed and believe, and on that basis allege, that a more accurate estimate of defendants' processing time for appeals such as Ms. Consuegra's is eighteen to twenty-four months.

<u>IRREPARABLE INJURY</u>

98.  As a result of the aforementioned policies and practices of the defendants, plaintiffs and class members have suffered, are suffering and will continue to suffer irreparable harm.  Plaintiffs have been deprived of their goal of citizenship.  As a result, they have suffered grievously, including the denial of the right to vote and otherwise participate in our democracy; the loss, or threatened loss, of life sustaining federal benefits; the fear and despair engendered

by loss of life-sustaining benefits; inability to file visa petitions for immediate relatives as United States citizens; and the loss of the substantial and unique benefits of naturalization.

### NO ADEQUATE REMEDY AT LAW

99.  As to each named plaintiff described above, and each member of the plaintiff class, no administrative remedies remain to be exhausted that would not be futile or would provide the relief sought in this complaint and plaintiffs have no adequate remedy at law.

### ATTORNEYS' FEES AND COSTS

100.  As a result of Defendants' unlawful conduct, plaintiffs were required to retain counsel and to incurr costs, fees and expenses in prosecuting this case.  Plaintiffs intend to seek fees under the Equal Access to Justice Act.

### FIRST CLAIM FOR RELIEF

(Violation of 8 U.S.C. § 1423(b)(1), 8 C.F.R. §§ 312.1, 312.2)

101.  Plaintiffs, on behalf of themselves and all persons similarly situated, reallege and incorporate by reference paragraphs 1 through 100 inclusive.

102.  Defendants have violated and continue to violate the provisions of 8 U.S.C. § 1423(b)(1), 8 C.F.R. § 312.1 and 312.2 and the interpretive guidelines.

103.  As a result of Defendants' violation of 8 U.S.C. § 1423(b)(1), 8 C.F.R. § 312.1 and 312.2, the plaintiffs and class

members have been unlawfully deprived of a medical waiver of the English and Civics portions of the naturalization examination.

### SECOND CLAIM FOR RELIEF

(Violation of the Administrative Procedures Act,
5 U.S.C. § 701 et seq.)

104.  Plaintiffs, on behalf of themselves and all persons similarly situated, reallege and incorporate by reference paragraphs 1 through 100 inclusive.

105.  Defendants are in violation of the Administrative Procedures Act, 5 U.S.C. § 701 et seq., in that they have unlawfully withheld agency action to which the plaintiff class is entitled and have not acted in accordance with law by maintaining the policies and practices as set forth herein which are in violation of 8 U.S.C. § 1423(b)(1), 8 C.F.R. §§ 312.1 and 312.2 and the defendants' interpretive policies, the Fifth Amendment to the United States Constitution, the Freedom of Information Act, 5 U.S.C. § 552 and the rule making provisions of the Administrative Procedures Act, 5 U.S.C. § 553, et seq.

106.  As a result of Defendants' violation of 5 U.S.C.§ 701, et seq., the plaintiffs and class members have been unlawfully deprived of a medical waiver of the English and Civics portions of the naturalization examination.

### THIRD CLAIM FOR RELIEF

(Violation of the Administrative Procedures Act, 5 U.S.C. § 553)

107.  Plaintiffs, on behalf of themselves and all persons similarly situated, reallege and incorporate by reference paragraphs 1 through 100 inclusive.

108.   Defendants are in violation of the Administrative Procedures Act, 5 U.S.C. § 553 in that they have unlawfully utilized secret standards and bases for determination which are substantive rules which have not been adopted in conformity with the notice, publication and comment provisions of 5 U.S.C. § 553, et seq.

109.   As a result of Defendants' violation of 5 U.S.C. § 553, the plaintiffs and class members have been unlawfully deprived of a medical waiver of the English and Civics portions of the naturalization examination.

<u>FOURTH CLAIM FOR RELIEF</u>

(Violation of the Freedom of Information Act, 5 U.S.C. § 552)

110.   Plaintiffs, on behalf of themselves and all persons similarly situated, reallege and incorporate by reference paragraphs 1 through 100 inclusive.

111.   Defendants are in violation of the Freedom of Information Act, 5 U.S.C. § 552 in that:

a.   they have unlawfully utilized secret standards and bases for determination which are substantive rules and statements of general policy and interpretations of general applicability which have not been published in the Federal Register; and

b.   they have unlawfully utilized secret standards and bases for determination which are statements of general policy and interpretations of general applicability and instructions to staff which they have refused to make available for public inspection.

37

112.   As a result of Defendants' violation of 5 U.S.C. §
552, the plaintiffs and class members have been unlawfully
deprived of a medical waiver of the literacy and civics and
history portions of the naturalization examination.

FIFTH CLAIM FOR RELIEF

(Violation of the Administrative Procedures Act,
5 U.S.C. § 555(e))

113.   Plaintiffs, on behalf of themselves and all persons
similarly situated, reallege and incorporate by reference
paragraphs 1 through 100 inclusive.

114.   Defendants are in violation of the Administrative
Procedures Act, 5 U.S.C. § 555(e) in that they have maintained a
policy and practice of denying requests for medical waivers
without providing any statement of the grounds for denial.

115.   As a result of Defendants' violation of 5 U.S.C. §
555(e), the plaintiffs and class members have been unlawfully
deprived of a medical waiver of the English and Civics portions
of the naturalization examination.

SIXTH CLAIM FOR RELIEF

(Violation of the Fifth Amendment to the United States
Constitution - Procedural Due Process)

116.   Plaintiffs, on behalf of themselves and all persons
similarly situated, reallege and incorporate by reference
paragraphs 1 through 100 inclusive.

117.   Defendants are in violation of the Fifth Amendment to
the United States Constitution in that they are depriving
plaintiffs and members of the plaintiff class of their right to a

medical waiver upon the presentation of a properly completed
Request for Medical Waiver without due process of law in that
they have maintained a policy and practice of denying requests
for medical waivers without providing the applicant of any notice
of the deficiencies, notice of the standards used or notice of
the basis for denial.

118.   As a result of Defendants' violation of the procedural
due process rights of the plaintiff class, the plaintiffs and
class members have been unlawfully deprived of a medical waiver
of the English and Civics portions of the naturalization
examination.

<u>SIXTH CLAIM FOR RELIEF</u>

(Violation of the Fifth Amendment to the United States
Constitution - Substantive Due Process)

119.   Plaintiffs, on behalf of themselves and all persons
similarly situated, reallege and incorporate by reference
paragraphs 1 through 100 inclusive.

120.   Defendants are in violation of the Fifth Amendment to
the United States Constitution in that they are depriving
plaintiffs and members of the plaintiff class of their right to a
medical waiver upon the presentation of a properly completed
Request for Medical Waiver without substantive due process of law
in that they have maintained a conscious policy and practice of
denying requests for medical waivers so arbitrarily and
capriciously, lacking any standards for determination other than
the whims and prejudices of the individual decision makers so as

to violate the substantive due process rights of the plaintiffs and the members of the plaintiff class.

121.   As a result of Defendants' violation of the substantive due process rights of the plaintiff class, the plaintiffs and class members have been unlawfully deprived of a medical waiver of the English and Civics portions of the naturalization examination.

REQUEST FOR RELIEF

WHEREFORE, plaintiffs respectfully request that this Court:

1. Accept jurisdiction and maintain continuing jurisdiction of this action.

2. Certify this action as a class action.

3. Declare as unlawful the aforementioned practices and procedures of the defendants and their agents as violative of 8 U.S.C. § 1423(b)(1), 8 C.F.R. §§ 312.1 and 312.2, 5 U.S.C. §§ 552, 553 and 555(e) and the Fifth Amendment to the United States Constitution.

4. Declare as agency action unlawfully withheld and unreasonably delayed, pursuant to 5 U.S.C. § 706(1), the violation by defendants and their agents of 8 U.S.C. § 1423(b)(1), 8 C.F.R. §§ 312.1 and 312.2, 5 U.S.C. §§ 552, 553 and 555(e) and the Fifth Amendment to the United States Constitution.

5. Issue a preliminary and permanent injunction pursuant to 28 U.S.C. § 1361 and 5 U.S.C. § 706(1) compelling Defendants and their agents, to:

40

(a)   evaluate all pending and future requests for medical waivers of the English and Civics portion of the naturalization examination as required by 8 U.S.C. § 1423(b)(1), 8 C.F.R. §§ 312.1 and 312.2, the implementing guidelines and such uniform standards as are hereafter developed;

(b)   reevaluate all requests for medical waivers of the English and Civics portion of the naturalization examinations which have been denied at any time since March 19, 1997, pursuant to the requirements of 8 U.S.C. § 1423(b)(1), 8 C.F.R. §§ 312.1 and 312.2, the implementing guidelines and such uniform standards as are hereafter developed;

(c)   develop standards for the evaluation of the sufficiency of requests for medical waivers of the English and Civics portion of the naturalization examinations which are consistent with 8 U.S.C. § 1423(b)(1), 8 C.F.R. §§ 312.1 and 312.2 and the implementing guidelines;

(d)   publish in the Federal Register and make available to the public the standards utilized by the defendants,  including such uniform standards as are hereafter developed, for the evaluation of the sufficiency of requests for medical waivers of the English and Civics portion of the naturalization examinations;

41

(e) provide notice of the reasons for the rejection of the medical waiver sufficient to allow the applicant to understand the bases for the rejection and, if possible, to correct them, to all applicants for naturalization whose requests for medical waivers of the English and Civics portion of the naturalization examinations have been rejected.

6.   Grant attorneys' fees and costs of this suit under the Equal Access to Justice Act, 28 U.S.C. § 2412.

7.   Grant such other relief as this Court may deem just and proper.

Respectfully submitted,

JoNel Newman, Esq.
Randall C. Berg, Jr., Esq.
Peter M. Siegel, Esq.

Florida Justice Institute, Inc.
2870 First Union Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131-2309
(305) 358-2081
(305) 358-0910 - Fax


Charles F. Elsesser, Jr., Esq.

Florida Legal Services, Inc.
3000 Biscayne Blvd., Suite 450
Miami, Florida 33137
(305) 573-0092
(305) 576-9664 - FAX

Cheryl Little, Esq.
Joan Friedland, Esq.
Lisette Losada, Esq.

Florida Immigrant Advocacy Center
3000 Biscayne Blvd., Suite 400
Miami, Florida 33137
(305) 576-6273
(305) 576-6273 - FAX

Attorneys for Plaintiffs

By: _____
    JoNel Newman
    Florida Bar No. 0112320

43

JS 44 (Rev. 07/89)

# CIVIL COVER SHEET

**98 2231**

The JS44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

AMPARO CAMPOS, HECTOR CORELLA, ANGELA RODRIGUEZ, JOSEFINA LOPEZ, JUANA QUINTERO, SOFIA PARDO, et al.,

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Miami-Dade
(EXCEPT IN U.S. PLAINTIFF CASES)

**CIV-GOLD**

## DEFENDANTS

IMMIGRATION AND NATURALIZATION SERVICE, DORIS MEISSNER, etc., et al.,

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT **MAGISTRATE JUDGE**
(IN U.S. PLAINTIFF CASES ONLY) **TURNOFF**
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

A Dade / 98 cv 2231 / Gold / Turnoff

**(C)** ATTORNEYS (FIRM, NAME, ADDRESS, AND TELEPHONE NUMBER)
JoNel Newman, Esq., Florida Justice Institute, Inc., 200 South Biscayne Boulevard, Suite 2870, Miami, Florida 33131 - (305) 358-2081

ATTORNEYS (IF KNOWN)

**(D)** CIRCLE COUNTY WHERE ACTION AROSE:
(DADE) MONROE, BROWARD, PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE, HIGHLANDS

## II. BASIS OF JURISDICTION (PLACE AN X IN ONE BOX ONLY)

□ 1 U.S. Government Plaintiff

□ 3 Federal Question (U.S. Government Not a Party)

X 2 U.S. Government Defendant

□ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (For Diversity Cases Only)
(PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)

|                                              | PTF | DEF |                                                                 | PTF | DEF |
|----------------------------------------------|-----|-----|-----------------------------------------------------------------|-----|-----|
| Citizen of This State                        | □ 1 | □ 1 | Incorporated or Principal Place of Business In This State       | □ 4 | □ 4 |
| Citizen of Another State                     | □ 2 | □ 2 | Incorporated and Principal Place of Business In Another State   | □ 5 | □ 5 |
| Citizen or Subject of a Foreign Country      | □ 3 | □ 3 | Foreign Nation                                                  | □ 6 | □ 6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE)
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY) **Whether defendants' policy and practice in determining medical waiver requests in naturalization proceedings violates plaintiffs' rights under 8 USC §1423, 5 USC §701 et seq., 5 USC §§552, 553 and 555(e) and the Fifth Amendment to the United States Constitution**

Iva. 10 days estimated (for both sides) to try entire case.

## V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)

| CONTRACT | PERSONAL INJURY | PERSONAL INJURY | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|----------|-----------------|-----------------|--------------------|------------|----------------|
| □ 110 Insurance | □ 310 Airplane | □ 362 Personal Injury - Medical Malpractice | □ 610 Agriculture | □ 422 Appeal 28 USC 158 | □ 430 Banks and Banking |
| □ 120 Marine | □ 315 Airplane Product Liability | □ 365 Personal Injury - Product Liability | □ 620 Other Food & Drug | □ 423 Withdrawal 28 USC 157 | □ 450 Commercial/ICC Rates/etc. |
| □ 130 Miller Act | □ 320 Assault, Libel & Slander | □ 368 Asbestos Personal Injury Product Liability | □ 625 Drug Related Seizure of Property 21 USC 881 | **PROPERTY RIGHTS** | □ 460 Deportation |
| □ 140 Negotiable Instrument | □ 330 Federal Employers' Liability | | □ 630 Liquor Laws | □ 820 Copyrights | □ 470 Racketeer Influenced and Corrupt Organizations |
| □ 150 Recovery of Overpayment & Enforcement of Judgment | □ 340 Marine | | □ 640 R.R. & Truck | □ 830 Patent | □ 810 Selective Service |
| □ 151 Medicare Act | □ 345 Marine Product Liability | **PERSONAL PROPERTY** | □ 650 Airline Regs | □ 840 Trademark | □ 850 Securities/Commodities/Exchange |
| □ 152 Recovery of Defaulted Student Loans (Excl. Vets) | □ 350 Motor Vehicle | □ 370 Other Fraud | □ 660 Occupational Safety/Health | **SOCIAL SECURITY** | □ 875 Customer Challenge 12 USC 3410 |
| □ 153 Recovery of Overpayment of Veteran's Benefits | □ 355 Motor Vehicle Product Liability | □ 371 Truth in Lending | □ 690 Other | □ 861 HIA (1395ff) | □ 891 Agricultural Acts |
| □ 160 Stockholders' Suits | □ 360 Other Personal Injury | □ 380 Other Personal Property Damage | **LABOR** | □ 862 Black Lung (923) | □ 892 Economic Stabilization Act |
| □ 190 Other Contract | | □ 385 Property Damage Product Liability | □ 710 Fair Labor Standards Act | □ 863 DIWC/DIWW (405(g)) | □ 893 Environ. Matters |
| □ 195 Contract Product Liability | | | □ 720 Labor/Mgmt. Relations | □ 864 SSID Title XVI | □ 894 Energy Alloc. Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | □ 730 Labor/Mgmt. Reporting & Disclosure Act | □ 865 RSI (405(g)) | □ 895 Freedom of Info. |
| □ 210 Land Condemnation | □ 441 Voting | □ 510 Motions to Vacate Sentence Habeas Corpus: | □ 740 Railway Labor Act | **FEDERAL TAX SUITS** | □ 900 Appeal of Fee Determination Under Equal Access to Justice |
| □ 220 Foreclosure | □ 442 Employment | □ 530 General | □ 790 Other Labor Litigation | □ 870 Taxes (U.S. Plaintiff or Defendant) | □ 950 Constitutionality of State Statutes |
| □ 230 Rent Lease & Eject. | □ 443 Housing/Accommodations | □ 535 Death Penalty | □ 791 Empl. Ret. Inc. Security Act | □ 871 IRS - Third Party 26 USC 7609 | X 890 Other Statutory Actions |
| □ 240 Torts to Land | □ 444 Welfare | □ 540 Mandamus & Other | | **OTHER STATUTES** | |
| □ 245 Tort Product Liab. | □ 440 Other Civil Rights | □ 550 Civil Rights | | □ 400 State Reapportionment | |
| □ 290 All Other Real Prop. | | | | □ 410 Antitrust | |

## VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)

X 1 Original Proceeding   □ 2 Removed from State Court   □ 3 Remanded from Appellate Court   □ 4 Reinstated or Reopened   □ 5 Transferred from another district (specify)   □ 6 Multidistrict Litigation   □ 7 Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A **CLASS ACTION**
X UNDER F.R.C.P. 23

DEMAND $ Declaration & Injunctive Relief

Check YES only if demanded in complaint:
**JURY DEMANDED:** □ YES ☒ NO

## VIII. RELATED CASES(S) (See instructions):
**IF ANY**    JUDGE _____    DOCKET NUMBER _____

DATE
September 22, 1998

SIGNATURE OF ATTORNEY OF RECORD
JoNel Newman, Esq.    *JoNel Newman*

UNITED STATES DISTRICT COURT
S/F I-2
REV. 6/90

FOR OFFICE USE ONLY: Receipt No. ____    Amount : ____
Date Paid: ____    M/fp: ____   Yes