(                              (

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

FILED BY〰〰〰〰 ___ 5.C.

98 DEC 18  PM 4: 04

CARLOS JUENKE
CLERK U.S. DIST. CT.
S.D. OF FLA.-MIAMI

AMPARO CAMPOS, HECTOR CORELLA,       )
ANGELA RODRIGUEZ, JOSEFINA            )
LOPEZ, JUANA QUINTERO, SOFIA          )
PARDO  and AURA CONSUEGRA on          )
behalf of themselves and all others   )          Case No.  98-2231 CIV-GOLD
similarly situated,                   )          Magistrate Judge Turnoff
                                      )
        Plaintiffs,                   )
                                      )
vs.                                   )
                                      )
IMMIGRATION AND NATURALIZATION        )
SERVICE; DORIS MEISSNER, Commissioner, )         **PLAINTIFFS' MEMORANDUM**
Immigration and Naturalization Service; )        **IN SUPPORT OF MOTION TO**
ROBERT WALLIS, District Director,     )          **CERTIFY THE CLASS**
Immigration and Naturalization Service, )
Miami; and ELAINE WATSON, Director,   )
Naturalization Unit, Immigration and   )
Naturalization Service, Miami,        )
                                      )
        Defendants.                   )
_____          )

## I. INTRODUCTION

Plaintiffs  AMPARO  CAMPOS,  HECTOR  CORELLA,  ANGELA  RODRIGUEZ,

JOSEFINA  LOPEZ, JUANA QUINTERO, SOFIA PARDO  and AURA CONSUEGRA are poor,

disabled legal permanent residents of the United States who have applied for  naturalization but who

are unable, solely due to a physical or developmental disability or mental impairment to learn basic

English and the fundamentals of United States history and government ("Civics") so as to pass the

English and Civics portion of the naturalization exam.

Plaintiffs challenge defendants' systematic and Miami District-wide policy of refusing to

evaluate their requests for medical waivers as required by statute and their own regulations and

guidelines, of evaluating all applications for medical waivers in a standardless, totally arbitrary and idiosyncratically capricious manner and of refusing to inform the members of the plaintiff class of the bases for the denial of their requests or even the standards used to deny them. The plaintiffs, all of whom are gravely ill and/or severely handicapped, on behalf of themselves and all others similarly situated, simply request that this Court enjoin the defendants' illegal policies and practices and require the defendants to consider the class members' requests for waiver pursuant to the correct legal and constitutional standards and procedures.

Plaintiffs bring this action for declaratory and injunctive relief on their own behalf and on behalf of all others similarly situated, pursuant to Federal Rules of Civil Procedure, Rule 23(a) and (b)(2). The class which plaintiffs seek to represent consists of the following:

> All persons within the Miami District of the Immigration and Naturalization Service who have properly applied, or will apply in the future, for naturalization under 8 U.S.C. § 1445 who have also had pending at any time since March 19, 1997, a request for a waiver of either or both of the naturalization requirements that they demonstrate an understanding of the English language and that they demonstrate a knowledge and understanding of the fundamentals of the history, and of the principles and form of government of the United States, because of a medically determinable physical or mental impairment and whose request for waiver is now pending, will be filed in the future, or has been rejected by the INS.

## II. THE PROPOSED CLASS SATISFIES THE PREREQUISITES OF A CLASS ACTION REQUIRED BY FED. R. CIV. P. 23(a)

Rule 23 (a) of the Federal Rules of Civil Procedure sets forth the basic requirements for maintaining a class action pursuant to the rule:

> (a) ...One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(                                    (

While the plaintiffs bear the burden of showing that the requirements of the Rule have been met, "[f]or the purposes of class certification...the Court accepts the Plaintiffs' substantive allegations as true."  In Re Carbon Dioxide Antitrust Litigation, 149 F.R.D. 229, 232 (M.D. Fla. 1993).  In addition, "[t]he Court resolves any doubt in favor of class certification." Id., at 232. See also, Blackie v. Barrack, 534 F.3d 891, 901 n.17 (9th Cir. 1975); Jackson v. Motel 6 Multipurpose, Inc., 175 F.R.D. 337, 340 (M.D. Fla. 1997); Mateo v. M/S Kiso, 805 F.Supp. 761, 771 (N.D.Cal. 1991); German v. Federal Home Loan Mortgage Corp., 885 F.Supp. 537, 547 (S.D.N.Y. 1995). Finally, the court is not to conduct an inquiry into the merits of the plaintiffs' claim as part of the class certification proceedings. As stated by the Supreme Court in Eisen v. Carlyle & Jacquelin, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed. 2d 732 (1974):

> ...in determining the propriety of a class action, the question is not whether...plaintiffs have stated a cause of action or will prevail on the merits but rather whether the requirements of Rule 23 are met.

Id., at 417 U.S. at 178, 94 S.Ct. at 2153. As is demonstrated herein, the class and the representatives proposed amply fulfill these requirements.

A.  The Proposed Class is so Numerous that Joinder of all Members is Impracticable.

Through discovery plaintiffs have determined that the number of individuals that fall within the class definition set forth above is well over 3,000, far beyond any number that could reasonably or practically be joined in a single lawsuit. In Response # 16 in Defendants' First Response to Plaintiffs' First Request for Production (hereafter "Production Response #16") defendants provided the total number of persons who applied for medical waivers since March, 1997: "INS estimates that

3

since March, 1997, the Miami Office has received approximately 6,000 waiver requests."
(Defendants' First Response to Plaintiffs' First Request for Production has been filed with the court
contemporaneously with the filing of this Motion.)

Since the class defined above consists only of those denied or still pending, the total number
of 6,000 medical waiver requests should be reduced by the number which were approved[1]. Elaine
Watson, a named defendant and the Section Chief of the Naturalization Unit of the Miami INS
District, testified by declaration filed in opposition to plaintiffs' request for a preliminary injunction
that the Miami office had approved only 38.5 % of the medical waiver requests received, denying
the remaining 61.5%. (The Declaration of Elaine Watson is attached as Exhibit A to the Defendants'
Opposition to Plaintiffs' Motion for Preliminary Injunction.) Applying those percentages to the
6,000 medical waiver requests since March, 1997 would indicate that approximately 3,690 (or
61.5%) of the applicants who have requested a disability waiver since March, 1997 either have been
or will be denied.

These figures are confirmed by the other documents provided by the defendants. A copy of
the INS Disability Exceptions Log which, according to INS procedure, records all medical waiver
applications[2], was provided by defendants to the plaintiffs. (See, pp. 001 through 264 attached to
Defendants' First Response to Plaintiffs' First Request for Production which has been filed with the
court contemporaneously with the filing of this Motion.) The Disability Exceptions Log

---

[1]    Since the class also includes naturalization applicants who request medical waivers in the future, these
calculations are necessarily low. However, they are sufficient to demonstrate that the class members, even excluding
future members, far exceed the minimum number required to establish numerosity.

[2]    See Section 312 Disability Naturalization Adjudication Supplemental Policy Guidance for Field
Offices, March 12, 1997, p. 17, attached as Appendix I to Plaintiffs' Memorandum of Law In Support of Plaintiffs'
Emergency Motion For A Temporary Restraining Order And/Or Preliminary Injunction.

4

demonstrates that, since March, 1997, over 5,200 naturalization applicants who have applied for a medical waiver have received a decision on their medical waiver request. Assuming, again, the denial rate of 61.5% which was testified to by Ms. Watson, almost 3,200 of the naturalization applicants who have requested a medical waiver since March 1997 have already been processed and denied.

These numbers are markedly greater than the minimum number of class members that courts have required to find "numerosity. In Cox v. American Cast Iron Pipe 784 F.2d 1546 (11th Cir. 1986) the court quoted with approval the analysis in 3B Moore's Federal Practice §23.05,

"... generally less than twenty-one is inadequate, more than forty adequate, with numbers in between varying according to other factors." Id., at 1553. See also, Wescott v Califano, 460 F.Supp. 737 (D.Mass.1978), (permitting a class of welfare recipients numbering in excess of 148); Custom v. Trainor 74 F.R.D. 409 (N.D.Ill.1977), (permitting a class of welfare recipients numbering in excess of 62 members); National Association of Radiation Survivors v. Walters, 111 F.R.D. 595, 598 (N.D.Cal. 1986), rev'd on other grounds sub nom., National Association of Radiation Survivors v. Derwinski, 994 F.2d 583 (9th Cir. 1992) (court conditionally certified class, stating that if 40 benefit claimants could meet the class description, the class would be sufficiently large). With over 3,000 class members already identified in the present case there can be little doubt that the numerosity criterion has been fulfilled, and Courts have consistently applied these criteria to certify class actions challenging INS policies and practices with similar or fewer members. In Haitian Refugee Center v. Nelson, 694 F.Supp. 864 (S.D.Fla. 1988), aff'd, 872 F.2d 1555 (11th Cir. 1989), aff'd sub nom., McNary v. Haitian Refugee Center, 498 U.S. 479, 112 L.Ed.2d 1005, 111 S.Ct. 888 (1991), the court

found numerosity in a class challenge to a pattern and practice of INS when hundreds of immigrants are affected.

> Therefore the persons who have been affected by what the plaintiffs allege is illegal implementation of congressional policy number in the hundreds, possibly thousands, and therefore the numerosity allegations have been satisfied.

Id., at 877.  See also, Fernandez Roque v. Smith , 91 F.R.D. 117 (N.D. Ga. 1981) (class of 1,800 Cuban "Freedom Flotilla" refugees who were detained  in Atlanta Penitentiary); Haitian Refugee Center v. Civiletti, 503 F.Supp. 442 (S.D.Fla. 1980); aff'd sub nom.  Haitian Refugee Center v. Smith, 676 F.2d 1026 (11th Cir. 1982) (class of approximately 4,000 immigrants challenging INS pattern and practice certified.)

### B.  Common Questions Of Law And Fact

The second requirement of  Federal Rules of Civil Procedure Rule 23(a) is that "there are questions of law or fact common to the class."  The present class action seeks declaratory and injunctive relief with respect to the class as a whole.  The plaintiffs do not challenge their individual determinations.  Rather they challenge the defendants' policy or combination of policies by which defendants analyze, process and determine all medical waiver requests in the Miami District, which policies the defendants apply uniformly against all members of the class.  This is precisely the type of challenge that Fed.R.Civ.P 23 (particularly Rule 23(b)(2)) was designed to address.  In Tefel v. Reno, 972 F. Supp. 608 (S.D. Fla. 1997) a class of Nicaraguan refugees challenged the legality of the criteria being utilized by INS for determining whether suspension of deportation was available in their deportation cases.  The court held that actions for declaratory and injunctive relief which challenge the general administration of an INS program by their very nature deal with common

(                                    (

questions of law and fact.

> The Court is also satisfied that there is a predominantly common interest and the requirements of "commonality" and "typicality" are satisfied. The complaint raises class wide issues that are not directed to individual plaintiffs. Plaintiffs also challenge the manner in which the INS is administering its suspension program generally against Nicaraguan refugees, rather than challenging individual INS decisions. The issues raised in the complaint are precisely the type of common issues that Rule 23 envisions as properly subject to class action treatment.

Id., at 618.

As is shown by the allegations of the complaint and the declarations of the plaintiffs in support of the preliminary injunction[3], all members of the class share common factual and legal questions. The complaint alleges the following specific practices which the Miami district applies systemically to all of the plaintiff class:

> ...Specifically, defendants, with respect to applicants for naturalization in the Miami District, as a matter of practice and policy:
>
> a. Reject and deny properly completed N-648 Requests for Medical Waiver by "second guessing" the medical determination of the medical professional and substituting their own medical determination for the medical determination of the medical professional, without having the applicant evaluated by an INS medical doctor or clinical psychologist;
>
> b. Reject and deny properly completed N-648 Requests for Medical Waiver despite a completed attestation by a medical professional as to "the origin, nature and extent of the medical condition as it relates to the disability exceptions";
>
> c. Reject and deny properly completed N-648 Requests for Medical Waiver based on questions which they have regarding the N-648:
>
> (i) without attempting to reach the medical professional who completed the N-648 to answer any questions the DAO may have regarding the certification;
>
> (ii) for applicants who have been declared disabled by another state or federal government agency, without attempting to make contact with the

---

[3]       In support of this Motion, Plaintiffs rely upon the Declarations of the named plaintiffs filed on September 22, 1998 in support of Plaintiffs' Emergency Motion for a Temporary Restraining Order and/or Preliminary Injunction. See Notice of Filing, Exhibits A through M.

agency to see if any information can be gained to clarify the questions which the officer has about the medical professional's certification;

(iii) without ever requesting from the medical professional who made the original disability certification a production of supplemental records from the applicant's medical files;

(iv) without ever requesting at any time a second N-648 from an "authorized medical professional other than the medical professional that completed the first certification;"

(v) without ever having the applicant evaluated at any time by an INS medical doctor or clinical psychologist.

d. Reject and deny properly completed N-648 Requests for Medical Waiver utilizing wholly arbitrary and capricious standards which vary from officer to officer, from supervisor to supervisor, and from determination to determination;

e. Reject and deny properly completed N-648 Requests for Medical Waiver based on secret standards which have never been published in the Federal Register and which they refuse to provide to the public;

f. Reject and deny properly completed N-648 Requests for Medical Waiver without ever providing the rejected applicants with a meaningful notice of the basis for the rejection, the standards employed or the means to cure the deficiencies.

Class Action Complaint, ¶ 30. In addition, plaintiffs allege that the class shares common questions of law as to whether the aforementioned "current practices and policies in the Miami District for evaluating requests for medical waiver of the English language and Civics portion of the naturalization exam violate 8 U.S.C. § 1423(b)(1), 8 C.F.R. §§ 312.1 and 312.2 [Immigration and Nationality Act (INA) and regulations], 5 U.S.C. § 701 et seq.[Administrative Procedures Act (APA)], 5 U.S.C. § 552 [Freedom of Information Act], 5 U.S.C. §553 [APA], 5 U.S.C. § 555(e)[APA] and the Fifth Amendment to the United States Constitution." (Class Action Complaint, ¶ 18 A.)

Since all of the plaintiffs have applied for a medical waiver and all have had their medical waiver request rejected, these factual and legal questions are identical for each member of the class. Since all of their applications for medical waivers were reviewed using the same district wide practices and procedures, the defendants' policies affected all class members equally.

8

While the court need not look beyond these allegations in the pleadings in order to certify the class, it may do so when such an inquiry can assist in assuring the appropriateness of certification. <u>CV Reit, Inc. v. Levy,</u> 144 F.R.D. 690, 695 (S.D. Fla. 1992). In the present case, the allegations of the complaint, accepted as true, more than fulfill the most stringent standard in delineating with specificity both the common factual questions and the common questions of law shared by the plaintiff class. Nevertheless, plaintiffs have also already conducted extensive initial discovery concerning defendants' practices. That discovery, while preliminary, further confirms the existence of the practices and policies alleged in the complaint.[4] For example, as this Court noted in its Order Granting Plaintiffs' Motion for Preliminary Injunction (hereafter "Prelim. Inj. Order"), the affidavit of Dr. Ada Rivera "supports a conclusion that the defendants are second guessing the medical determinations expressed on the N-648 forms by substituting their own medical opinions..." (Prelim. Inj. Order, p.19.)

At her deposition Dr. Rivera confirmed that not only did she second guess the medical determinations of the treating physician, but that the treating physician was required to justify to Dr. Rivera's satisfaction his/her diagnosis, treatment decisions, and conclusions about the patient's inability to learn English and civics by providing extensive documentation from the patient's medical files *despite the fact that the public has never been informed that such exhaustive medical*

---

[4]     As stated above, the court is to accept the allegations of the complaint as true. Plaintiffs submit this initial discovery material simply to confirm that, even after initial discovery, the class definition as alleged in the complaint remains valid.

(                                              (

*information is required.*[5]

Q  [Ms. Friedland, Esq.] What information was necessary to substantiate what the doctor was saying?

A [Dr. Rivera] It depends on the diagnosis...Now it was our responsibility to make sure that all the information that was written there, or there was enough information written there to tell us, yes, this person does have this.

Q  With respect to dementia, what would you want to see?

A   I would want to see mental health evaluation, either by a psychologist or a psychiatrist, I would want to see laboratories that would rule out problems with their thyroid, problems with -- sometimes, you know, renal problems sometimes can give that problem,  problems, any problems, any physical problems that could affect the brain in such a manner that could  cause this. I would like to see that information. And  then also we would usually in most circumstances we  would be looking at a CT scan of the brain to see if they had cerebral atrophy or changes in the cerebral cortex.

Q   What would you want to see with respect to organic brain syndrome?

A   Same thing, that they've ruled out the other conditions.

Q   And what would you want to see with respect to major depression recurrent?

A  Psychiatric evaluation and information that shows me the frequency with which the person had these symptoms that were there.  And when I'm talking about psychiatric evaluation, we're talking about complete  evaluation that has [axis] one, two, and three in it, included in it.  And then depending -- well, we're talking about major depression.  That would be it for major depression.  And then the frequency of the episodes, whether they required hospitalization, just  general information as to what happened, what made you  come to that determination that it's recurrent.

Q   And you would need all that information to know if the diagnosis was correct?

A   Yes.

Q    When you say you wanted to see that information, in the absence of that information, the N-648 was insufficient?

A   We would ask for more, uh-huh.

Q   And so it was insufficient?

A   Yes.

Q   And with respect to circulatory conditions, what would you want to see?

A  It depends on the condition. It depends on what the diagnosis was. I would want to see an electrocardiogram or the result of an  electrocardiogram.  I might want to see if it's a conduction problem over a period of time.  I might want  to see a Holter examination to see what it was over a  period of time, if the person is having

---

[5]        An unsigned copy of the Deposition of Ada Rivera has been filed with the Court contemporaneously with the filing of this Motion.

syncopal episodes. These are normal standard things you would do to make certain diagnoses. That's basically it.
Q    And that's what you would want to see in order to make the judgment that you had to make?
A    Yes.

Rivera Deposition, pp.68 - 71.  Dr. Rivera's testimony with respect to her review of Ms. Lopez'

medical waiver request confirms that in the absence of this extensive documentary proof, *the*

*requirements for which were never communicated to applicants*, the request for a waiver would

simply be denied.

> Q. [Ms. Friedland, Esq.] ...[W]as it your conclusion that Ms. Lopez's condition was not as severe as what the doctor was describing?
> A [Dr. Rivera]  My conclusion was that the evidence -- the  information that the doctor put in there didn't show me  that it was that severe, didn't demonstrate, didn't support the fact that it was that severe to cause  circulatory -- I'm basing this on the fact of  circulatory problems that would decrease the level of  oxygen in the brain. So the level of the cardiac  arrhythmia, the problem of electrical conduction and pushing that blood out into the body would have to be  so impaired that the person wouldn't have enough  oxygen, and that would decrease their ability to learn  or do a whole bunch of stuff.
> What I am saying is that based on the picture  the doctor, the history and the physical that the  doctor wrote down on the N-648, this person was a  candidate for a pacemaker because I've seen patients of old age, old age that would have a pacemaker on. So  based on the information that was there, it did not  support the fact that the person -- that the  person's -- the patient's sick sinus syndrome was that severe to make it be a disabling condition.  I hope I'm  saying that correctly.
> Q      Did you disagree with his conclusion that her  overall health precluded pacemaker insertion?
> A.   Based on the information that was there, yes,  based on the information that was there.

Rivera Deposition, pp. 108-109.  Indeed, Dr. Rivera indicated that defendants would reject a fully

completed N-648 simply because she would prefer additional tests and medical documentation to

confirm, in her mind, the treating physician's diagnosis.  (Rivera Deposition, pp. 68 - 71.)  Finally,

Dr. Rivera also provided support for plaintiffs claim that class members were never notified of the

bases for their denial.  When confronted in her deposition with the notice provided by defendants' to plaintiff Angela Rodriguez (in which every box was checked)[6], Dr. Rivera conceded that a treating physician would not know what documentation to provide.  (Rivera Deposition, p. 122.)

Similarly, plaintiffs' deposition of Mr. Rick Hamilton, Supervisory District Adjudication Officer (SDAO), demonstrates that defendants have created undisclosed standards for determining medical waiver requests and "disqualifying" disabilities which can not provide a basis for a medical waiver under any circumstances.[7]  Mr. Hamilton has substantial responsibility for overseeing the medical waiver program in the Miami District.  He was the only SDAO to attend the initial training in Washington, D.C. regarding the medical waiver criteria.  He was subsequently put in charge of the medical unit of the Naturalization Section of the Miami District (Hamilton Deposition, p. 19) and was also responsible for the training of the other SDAOs with respect to the medical waiver procedures.  (Id.)  Mr. Hamilton repeatedly testified that his understanding of the rules required that a disability which was, in any way, "age related" or related to "depression" could not qualify an applicant for a medical waiver regardless of its impact on the applicant.

> Q. [Ms. Newman, Esq.]  What did you mean by the term qualifying disability?
> A. [Mr. Hamilton]  Our guidance from headquarters is that old age and simple depression do not qualify.
> ...
> Q.  In the past, did you understand old age not qualifying to include conditions that may be related to or are the result of advanced age?
> A.  Yes.
> ...

---

[6]      A copy of the notice to which Dr. Rivera was referring is attached as Exhibit C to the plaintiffs' Exhibits filed in support of Plaintiffs' Emergency Motion for a Temporary Restraining Order and/or Preliminary Injunction.

[7]      An unsigned copy of the Deposition of Rick Hamilton with the relevant exhibits has been filed with the Court contemporaneously with the filing of this Motion

Q.  What do you understand to be a medical  condition or impairment that maybe due to old age?

A.  It would be some condition that they have  that develops in the older population.

Q.  In your mind, do you know of any such conditions?

A.  Alzheimer's.

Q.  Are there any others you can think of that  may be related to age?

A.  Not off the top of my head.

Q.  Is senility a possibility?

A.  That would be an old age condition.

Q.  What about dementia?

A.  I don't know if dementia is restricted to just old age.

Q.  Is it your understanding that on some occasions dementia could be an age-related illness?

A.  I believe it could be.

Q.  What about organic brain syndrome?

A.  That would be the same.  In some cases it  may be.

Hamilton Deposition, pp 64 - 72.  Mr. Hamilton confirmed the "age related" rule and "depression" related rule again and again when questioned regarding decisions on particular applicants.  For example, Mr. Hamilton explained that plaintiff Amparo Campos' age and depression were what caused him to deny her medical waiver request.

Q.  On page 862 [the denial form] the term old age is circled.  Does that have any significance?

A.  That would be the reason it was not accepted.

Q.  Could you explain why that was the reason [the medical waiver request] was not accepted?

A.   Doctor states having impaired memory of  recent events related of organic mental disorder  age-related. And on question 5 he states suffers memory loss of recent event proper, organic mental disorder, age-related.

Q.   Did you conclude based on reviewing pages 863 and 864 that Miss Campos' disability was related to her advanced age?

A.  It appears to have been because of old age.

Q.  Is that consistent with the policy about age and disabilities that you testified to this  morning that you think you received sometime in October?

A.  That is consistent with the policies that were in effect at that time.

Q.  When you say the policies that were in effect at that time, what policies are you referring to?

A.  Old age and simple depression do not qualify.

...

13

Q.  Well, does Miss Campos' form say that she is old and therefore she's entitled to an exception?

A.  The doctor states that it was age-related.

Q.  But does it list a medical impairment that is age-related?

A.  The doctor states age-related with no DSM's.

Q.  So is it your testimony that since there is no DSM, there is no impairment listed?

A.  My testimony is it's age-related.

Hamilton Deposition, pp. 113-115.

Q.  Is major depression recurrent not a qualifying disability?

A.  Simple depression does not qualify.

Q.  Well, is major depression recurrent a simple depression?

A.  I don't know.

Q.  Well, when you made a decision on Miss Campos' medical waiver request that appears at pages 854 and 855, did you believe major depression recurrent to be a simple depression?

A.  Yes.

Q.  Has anything happened since you made that decision that would change your mind about that?

A.  No.

Hamilton Deposition, pp. 119-120.   Mr. Hamilton testified similarly with respect to other named plaintiffs.  As to Angela Rodriguez:

Q.  Directing your attention to page 1113, the term old age is circled on the rejection of the N-648 which you filled out, is that correct?

A.  Yes.

Q.  Can you tell me why that was circled?

A.  Reading the N-648 it appears to be that doctor stated this was due to old age.

Q.  When you say the doctor said it was due to old age, can you tell me what exactly the doctor said that led you to that conclusion?

A.  On part 3, [page] 1114 organic brain syndrome, a mental disorder of the aged. On part 1115 states due to the natural aging process.

...

Q.  Is organic brain syndrome, if it occurs in the elderly, a non-qualifying disability?

A.  No. I've accepted organic brain syndrome.

Q.  Have you accepted it as a result of the aging process?

A.  Not if it was a result of old age.

Hamilton Deposition, pp. 127-128. As to Sofia Pardo:

14

Q.  Can you tell me what the basis for your decision on that medical waiver request was?

A.  I had circled old age on [page] 1175.

Q.  Is that why Miss Pardo's N-648 was not accepted?

A.  That would be the reason.

...

Q.  What on that medical waiver request form indicated to you that Miss Pardo was requesting a disability [waiver] based on her age?

A.  The doctor had stated senile dementia.

Hamilton Deposition, pp. 139-140.  Similar testimony from Mr. Hamilton as to his consistent application of the Miami District's unique *and undisclosed* age and depression rules with respect to numerous unnamed class members appears at pages 165-193 of the Hamilton Deposition transcript. Thus, in this motion plaintiffs rely not only on the specific and detailed allegations of the complaint as to a common practice impacting all members of the class, plaintiffs have also provided initial supporting evidence verifying that such common policies and practices exist as described in the complaint and that they have, indeed, been applied to all members of the plaintiff class.

The fact that, as a result of individual factual differences, these common policies and practices may have affected individual class member's cases differently should not affect commonality.  Courts have repeatedly held that individual factual differences do not affect commonality or typicality when the plaintiffs allege that defendants imposed an illegal policy on the entire class. Malloy v Eichler, 628 F.Supp. 582 (D.Del.1986).  In Haitian Refugee Center, Inc. v. Nelson, supra,  the court found both commonality and typicality based on allegations almost identical to those in the present case, stating:

> It must be noted that [commonality] does not require that all of the questions of law and/or  fact be common to all the plaintiffs. *Johnson v. American Credit Co. of Georgia*, 581 F.2d  526, 532 (5th Cir. 1978)...Class actions seeking injunctive or declaratory relief-As in the instant case-by their very nature present common questions of law or fact. [Citation omitted.] Commonality also exists when plaintiffs

15

(

allege that a defendant has acted or is acting uniformly regarding a class. *Haitian Refugee Center v. Smith*, 676 F.2d at 1033. The class of plaintiffs in this case allege that they were denied temporary residence status because the defendants imposed an illegal burden of proof that the applicants were unable to meet. Such an allegation is sufficient to meet the commonality and typicality requirements of Rule 23(a)(2) and (3). *See Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1557 (11th Cir. 1986).

Id., at 871.   Again in <u>Pottinger v. City of Miami</u>, 720 F.Supp. 955 (S.D.Fla. 1989), the court

reiterated the same rule.

The second requirement of Rule 23(a) requires a question of law or fact common to the members of the proposed class...It is only necessary to find at least one issue common to all class members [*Slaughter v. Levine*, 598 F.Supp. 1035, 1044 (D.Minn. 1984)]...The mere presence of factual differences will not defeat the maintenance of a class action if there are common questions of law. *Coley v. Clinton*, 635 F.2d 1364, 1378 (8th Cir. 1980).

Id., at 958.   For this reason, cases such as this, which challenge a "pattern and practice" of the INS

have been uniformly permitted to proceed as class actions. For example, in <u>Campos v. Nail</u>, 940

F.2d 495 (9th Cir. 1991), a class of Salvadoran and Guatemalan immigrants was permitted to

challenge the systemic pattern and practice of one Immigration Law Judge who continually denied

all requests for change of venue made by asylum seekers. In <u>Fernandez Roque v. Smith</u>, 91 F.R.D.

117 (N.D. Ga. 1981), the court certified a class of Cuban nationals who were denied parole and who

were challenging the system wide parole procedures of INS despite factual differences in the

individual cases. In <u>El Rescate v. Exec. Office for Immigration Review</u>, 727 F.Supp. 557 (C.D. Cal.

1989), <u>rev'd on other grds.</u>, 941 F.2d 950 (9th Cir. 1991), <u>amended on rehearing</u>, 959 F.2d 742 (9th

Cir. 1992), a class of all non- or limited English speaking persons subject to immigration court

proceedings in the Los Angeles, San Diego and El Centro immigration courts was permitted to

challenge the INS practice of not providing full interpretation of court proceedings. In <u>Montes v.</u>

<i>Thornburgh</i>, 919 F.2d 531 (9th Cir. 1990) a class action was permitted in a challenge to the "practice

and procedure" of an Immigration Judge in imposing filing practices in addition to those imposed

by INS guidelines. Finally, in <u>Haitian Refugee Center v. Smith</u>, 676 F.2d 1026 (11th Cir. 1982), a

class of more than 4,000 Haitians in south Florida who had sought political asylum in the United

States were permitted to challenge an INS "program" composed of a series of practices designed

"to achieve expedited mass deportation of Haitian nationals irrespective of the merits of an

individual Haitian's asylum application and without regard to the constitutional, treaty, statutory and

administrative rights of the plaintiff class." <u>Id.</u>, at 1026.

C. <u>Typicality Of Named Plaintiffs' Claims</u>

The third requirement of Federal Rules of Civil Procedure 23(a) is that "the claims or

defenses of the representative parties are typical of the claims or defenses of the class."  Closely

related to commonality, courts have held that for the claims to be typical of the class members the

named parties must have no interest antagonistic to or in conflict with those of the class they seek

to represent but rather their claims must arise from the same common issues of fact or law. <u>Turchin</u>

<u>v. Butz</u>, 405 F. Supp. 1263 (D. Minn. 1976); <u>Rosado v. Wyman</u>, 322 F. Supp. 1173 (E.D.N.Y.

1970); <u>aff'd</u> 437 F. 2d 619 (2d Cir.1970), <u>aff'd</u> 402 U.S. 991 (1971).  As stated in <u>Kornberg v</u>

<u>Carnival Cruise Lines</u> 741 F.2d 1332 (11th Cir. 1984) typicality exists when there is a:

> nexus between the class representative's claims or defenses and the common
> questions of fact or law which unite the class.  A sufficient nexus is established if the
> claims or defenses of the class and the class representative arise from the same event
> or pattern or practice and are based on the same legal theory.  Typicality however
> does not require identical claims or defenses.  A factual variation will not render a
> class representative's claim atypical unless the factual position of the representative
> differs markedly from that of other members of the class.

<u>Id.</u>, at 1337.

17

The claims of all named plaintiffs are typical of the claims of all proposed class members in that all named plaintiffs applied for a medical waiver of the English and Civics requirements of their naturalization application and all were subjected to the alleged illegal practices of INS both as to the substantive criteria and as to the determination procedure. Named plaintiffs have no interest antagonistic to or in conflict with the interests of the class members they seek to represent. Named plaintiffs and the proposed class share a common goal. All want the defendants' policies declared illegal. All desire that defendants act upon their applications for a medical waiver of the English and Civics requirement of their naturalization application while employing the correct substantive and procedural criteria.

### D. The Named Plaintiffs Will Fairly And Adequately Protect The Interests Of The Class

The final requirement of Federal Rules of Civil Procedure 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Adequate representation generally consists of an analysis of whether plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation and of whether plaintiffs have interests antagonistic to those of the rest of the class. Griffin v. Carlin 755 F.2d 1516 (11th Cir. 1985); Gonzalez v. Cassidy, 474 F.2d 67 (5th Cir. 1973); Herbst v. Able, 47 F.R.D. 11 (S.D.N.Y. 1969). The named plaintiffs' attorneys are qualified, experienced and able to conduct this action. The attorneys have previously litigated constitutional and statutory issues in federal courts and are familiar with the issues raised in this litigation. The three law firms representing the plaintiffs, Florida Justice Institute, Inc., Florida Legal Services, Inc., and Florida Immigrant Advocacy Center, Inc. have

18

(

litigated numerous class actions in both state and federal court and have both the personnel and the resources to fully litigate this action.

Additionally, as is demonstrated above, the claims of the named plaintiffs are the same as the members of the class they represent. The relief desired by the individuals is identical to the relief sought for the entire class. All seek declaratory and injunctive relief with respect to the class as a whole. Nor is there any likelihood of conflicts or antagonistic interests developing between the named plaintiffs and the class they represent since named plaintiffs do not request any different or additional relief for themselves other than the class wide relief. Wetzel v. Liberty Mutual Ins. Co., 508 F.2d 239, 247 (3d Cir. 1975), cert. denied, 421 U.S. 1011 (1975). In addition it is apparent that the representative plaintiffs will diligently and fairly protect and pursue the interests of their class. Mersay v. First Republic Corp. of Am., 43 F.R.D. 465, 470 (S.D.N.Y. 1968).

### III. THE PROPOSED CLASS SATISFIES THE REQUIREMENT OF RULES 23(B)(2) OF THE FEDERAL RULES OF CIVIL PROCEDURE

In addition to the requirements of Rule 23(a) of the Federal Rules of Civil Procedure, Rule 23 (b) (2) requires that the parties "opposing the class ha[ve] acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the class as a whole." Here, defendants have acted on grounds "generally applicable to the class as a whole" in that the challenged policy of ignoring the statutory and regulatory criteria for determining medical waiver applications, and substituting their own secret undisclosed criteria impacts identically upon all persons who apply for the medical waivers and thus on all members of the class.

19

(

As described above, the common characteristic of the class is precisely that defendants have a single policy or series of policies which they have applied to all members of the affected classes. It is solely to challenge that policy that the plaintiffs have brought this action and are seeking classwide declaratory and injunctive relief.  See Jettaway v. American Cast Iron Pipe Co., 494 F.2d 211, 257 (5th Cir. 1974), cert. denied, 467 U.S. 1247 (1984).

## IV.  THE COURT SHOULD CERTIFY THIS ACTION
## AS A CLASS ACTION

Based upon the foregoing, plaintiffs respectfully request that this Court find that the proposed class meets the requisites of Rule 23(a) and (b)(2), Federal Rules of Civil Procedure, and certify this action as a class action.

Respectfully submitted,

JoNel Newman, Esq.
Randall C. Berg, Jr., Esq.
Peter M. Siegel, Esq.

Florida Justice Institute, Inc.
2870 First Union Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131-2309
(305) 358-2081
(305) 358-0910 - Fax

Charles F. Elsesser, Jr., Esq.

Florida Legal Services, Inc.
3000 Biscayne Blvd., Suite 450
Miami, Florida 33137
(305) 573-0092
(305) 576-9664 - FAX

Cheryl Little, Esq.
Joan Friedland, Esq.
Lisette Losada, Esq.

20

(

Florida Immigrant Advocacy Center
3000 Biscayne Blvd., Suite 400
Miami, Florida 33137
(305) 573-1106
(305) 576-6273 - FAX

Attorneys for Plaintiffs

By: _____
          Charles F.Elsesser, Jr.
          Florida Bar No. 0971162

## CERTIFICATE OF SERVICE BY HAND DELIVERY

I certify that a copy of the foregoing was served by hand delivery pursuant to S.D.Fla.L.R. 5.2 by

(1)  serving a copy upon Mr. Dexter Lee, Esq., Assistant U.S. Attorney, 99 N.E. 4th St., Miami, FL 33132, by facsimile mail at (305) 530-7139 and by mailing a copy by regular mail on this 18th day of December, 1998.

(2) serving a copy upon Mr. Mark C. Walters, Esq., Ms. Teresa Wallbaum, Esq., Ms. Linda Wernery, Esq., Ms. Alice Loughran, Esq., Office of Immigration Litigation, Civil Division, Department of Justice, P.O. Box 878, Ben Franklin Station, Washington, D.C. 20044, by facsimile mail at (202) 616-9366 and by mailing a copy by regular mail on this 18th day of December, 1998.

CHARLES F. ELSESSER, JR.