UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

99 FEB 12 PM 4:21

| | |
|---|---|
| AMPARO CAMPOS, et al., ) | |
| ) | Case No. 98-2231-CIV-GOLD |
| Plaintiffs, ) | Magistrate Judge Turnoff |
| ) | |
| vs. ) | |
| ) | PLAINTIFFS' MEMORANDUM |
| IMMIGRATION AND NATURAL- ) | OF LAW IN SUPPORT OF MOTION |
| IZATION SERVICE; et al., ) | FOR SUMMARY JUDGMENT |
| ) | |
| Defendants. ) | |
| _____ ) | |

In considering a motion for summary judgment, the Court is to apply the standard set forth in Federal Rule of Civil Procedure 56(c), and it is the moving party's burden to meet this standard. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In deciding whether the moving party has satisfied this burden, a court must view the evidence, and all factual inferences arising from it, in the light most favorable to the non-moving party. Browning v. Peyton, 918 F.2d 1516, 1520 (11th Cir. 1990). However, the mere existence of a scintilla of evidence in support of the non-movant's position is insufficient. There must be evidence on which the trier of fact could reasonably find for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

For the reasons set forth below and in plaintiffs' prior submissions,[1] and based on the

---

[1] Plaintiffs have previously filed several memoranda of law that address many of the legal arguments made in this Memorandum. Rather than repeat them here, plaintiffs incorporate by reference the following pleadings: Plaintiffs' Memorandum of Law in Support of Emergency Motion for a Temporary Restraining Order and/or Preliminary Injunction (September 22, 1998), Plaintiffs' Response to Defendants' Opposition to Motion for a Preliminary Injunction (October 9, 1998), and Plaintiffs' Opposition to Defendants' Motion to Dismiss (November 17, 1998). Plaintiffs also rely on the prior Orders of this Court Granting Plaintiffs' Motion for Preliminary Injunction (October 16, 1998) and Denying Defendants' Motion to Dismiss (December 9, 1998).

undisputed material facts established by this litigation, defendants cannot present any evidence that would enable the Court to find in defendants' favor on plaintiffs' claims under the rulemaking provisions of the Administrative Procedures Act, 5 U.S.C. § 553, the Freedom of Information Act, 5 U.S.C. § 552(a)(2), the Due Process Clause of the Fifth Amendment, § 504 of the Rehabilitation Act, 29 U.S.C. § 794, the Immigration and Nationality Act, 8 U.S.C. § 1423(b)(1) and implementing regulations and the Administrative Procedures Act, 5 U.S.C. § 701, et seq. Plaintiffs are entitled to summary judgment on these claims as a matter of law.

## I. DEFENDANTS' SECRET RULES VIOLATE THE FREEDOM OF INFORMATION ACT (5 U.S.C. § 552) AND THE ADMINISTRATIVE PROCEDURES ACT (5 U.S.C. § 553).

Defendants' Miami District Office maintained a set of secret rules for deciding medical waiver requests that were never disclosed to applicants or the public. Defendants publicly took the position that there was no "list" of qualifying or non-qualifying disabilities. See Declaration of Ricky Hamilton in Support of Defendants' Opposition to Plaintiffs' Motion for a Preliminary Injunction, filed by defendants on October 9, 1998; Supplemental Policy Guidance 3/12/97 at 5. Defendants further published standards that stated that each request for a medical waiver would be determined on a "case-by-case basis" with no automatic qualifying disabilities. Id. Most recently, defendants reiterated their position that neither a disability that is related to, caused by or associated with old age, nor a depression-related disability prevents an applicant from having their medical waiver request considered on a case-by-case basis "like any other disease or disability." 12/30/98 Mem. 5-6.

Despite defendants' public positions, Miami District Office personnel testified repeatedly

that they employed secret (and unlawfully discriminatory)[2] criteria in determining medical waiver requests that required them to deny requests based on disabilities that related to or resulted from age or depression. Ricky Hamilton, the supervisor in the Miami District Office who had primary responsibility for medical waiver requests, testified that medical conditions which were related to or the result of advanced age did not qualify for medical waivers. Hamilton Dep. 71. Mr. Hamilton further testified that it was the policy and practice of the Miami District Office to deny N-648s if the disorder was age-related. Hamilton Dep. 117. Mr. Hamilton also testified that depression, including major depression recurrent, was not a qualifying disability. Consistent with these secret rules, Mr. Hamilton testified that he denied Ms. Campos's medical waiver request because she suffered from major depression recurrent:

> Q. Can you tell me why the medical waiver form at pages 854 and 855 was unacceptable?[3]
> A. The only thing the doctor put down was depression, anxiety, cognitive disorder....
> Q. Is major depression recurrent not a qualifying disability?
> A. Simple depression does not qualify.

---

[2]As shown in section III, below, discrimination against persons based on the type or severity of a disability violates § 504 of the Rehabilitation Act, 29 U.S.C. § 794.

[3]The N648 being discussed by Mr. Hamilton appears in Ms. Campos's A-file and states, in pertinent part:
> This patient has a psychiatric history for the past 16 years without any psychiatric hospitalizations. Currently she presents with diagnoses of 1) Major Depression, recurrent-moderate 296.32, 2) Generalized Anxiety 300.02, and 3) Cognitive Disorder 294.9. With respect to the patient's diagnosis of Cognitive Disorder, the patient reports increasing forgetfulness, i.e., forgetting appointments and getting lost on the streets if left alone. The patient tested on the Folstein, scoring an 18 from 30 possible points. This score indicates that the patient has dementia. See attached sample of Folstein. Poor cognition is [a] symptom of dementia. Dementia can not [be] cured and only progressively gets worse. Due to this diagnosis she is unable to retain anything studied for any length of time.

> Q. Well, is major depression recurrent a simple depression?
> A. I don't know.
> Q. Well, when you made a decision on Ms. Campos's medical waiver request that appears at pages 854 and 855, did you believe major depression recurrent to be a simple depression?
> A. Yes.
> Q. Has anything happened since you made that decision that would change your mind about that?
> A. No.

Hamilton Dep. 119-120.

Tom Jasso, one of defendants' Miami District Office Supervisors who adjudicated many medical waiver requests according to Mr. Hamilton's instructions, testified:

> Q. Have you ever received any instructions regarding dealing with disabilities that may be related to or the result of advanced age?
> A. Yes, sir.
> Q. What were those instructions?
> A. The instructions were that medical waiver could not be accepted based on old age....
> Q. Did you ever receive any instructions as to whether or not you could approve an N-648 based on a disability that is related to or the result of advanced age?
> A. If it is due to old age, I was told not to accept it.
> Q. Do you know what debilitating conditions or what disabilities may be related to or the result of advanced age?
> A. Yes.
> Q. Can you give me examples?
> A. Senile dementia....
> Q. Would that mean that someone whose disability is solely senile dementia would not qualify for an N-648 medical waiver?
> A. Yes, sir.
>     ....
> Q. Did you receive any special instructions regarding whether depression is a qualifying disability?
> A. Yes.
> Q. What were those instructions?
> A. My instructions or the instructions given to me were major depression by itself is not a disability which would be acceptable for the medical waiver.

Jasso Dep. 78-80.

The provisions of the Freedom of Information Act, 5 U.S.C. § 552, and the Administra-

4

tive procedures Act, 5 U.S.C. § 553 were enacted specifically to prevent the government from utilizing secret standards and undisclosed criteria in making decisions such as those made by defendants' Miami District Office in rejecting over 3,500 requests for medical waivers in this case. Renegotiation Board v. Bannercraft Co., 415 U.S. 1 (1974);[4] Smith v. National Transportation Safety Board, 981 F.2d 1326 (D.C.Cir. 1993).[5]

Defendants' failure to disclose their age-related and depression disqualification rules clearly violates the express mandate of the Freedom of Information Act, 5 U.S.C.§ 552(a)(2):

> A final order, opinion, statement of policy, interpretation, or staff manual or instruction that affects a member of the public may be relied on, used or cited as precedent by an agency against a party other than an agency only if -
>   (i) it has been indexed and either made available or published as provided by this paragraph; or
>   (ii) the party has actual and timely notice of the terms thereof.

See Renegotiation Board, 415 U.S. at 17-19. No members of the public - especially the plaintiffs, to whom it mattered most of all - were given any notice whatsoever that age-related disabilities and depression disqualified an applicant for a medical waiver.[6]

---

[4]The Supreme Court described Congress's purpose in enacting the FOIA as "opening administrative processes to the scrutiny of the press and general public...to enable the public to have sufficient information...with respect to the nature, scope, and procedure of federal government activities." 415 U.S. at 17 (citations omitted).

[5]"The purpose of the APA availability requirement is obviously to give the public notice of what the law is so that each individual can act accordingly." 981 F.2d 1328. Thus, "[t]he statute plainly requires each agency to make available and to index staff manuals et cetera that 'affect' the public." Id. The Court held that an agency's failure to publish a staff manual which contained an undisclosed sanction violated the APA and prohibited the agency from using the sanction.

[6]As argued in Plaintiffs' Opposition to Defendants' Motion to Dismiss, plaintiffs believe that it is not necessary to make a demand for the standards prior to bringing an action pursuant to the FOIA, 5 U.S.C.§ 552(a)(2). But see Order Denying Motion to Dismiss, pp. 9-10. However, this issue is irrelevant here as plaintiffs have indisputably made such a demand prior to the filing of this lawsuit. See Plaintiffs' Statement of Undisputed Material Facts, ¶¶ 61-62.

It is also clear that the Miami District Office's secret standards and disqualifications were applied in Miami as substantive "rules", which dictated agency action. The Miami rules were therefore subject to the notice and comment provisions of the Administrative Procedures Act, 5 U.S.C.§ 553. As the District of Columbia Circuit recognized in the seminal case of Pickus v. U.S. Bd. of Parole, 507 F.2d 1107, 1111-1113 (D.C. Cir. 1974), agency rules which tightly circumscribe discretion, providing criteria "calculated to have a substantial effect on ultimate [agency] decisions," are rules subject to the APA's notice and comment provisions.[7] In Jean v. Nelson, 711 F.2d 1455 (11th Cir. 1983), vac. as moot, 727 F.2d 957 (1984), the Eleventh Circuit applied this principle to the defendants in this case, stating:

> an announcement that INS will universally enforce a detention policy while limiting parole is " an agency statement of general...applicability and future effect, designed to implement, interpret, or prescribe law or policy...," in other words, a rule. The government attacks this approach as simplistic, yet it is exactly what the Administrative Procedure Act requires.

Id. at 1474. See also, American Trucking Association, Inc. v. United States, 688 F.2d 1337 (11th Cir. 1982), rev'd on other grounds 467 U.S. 354 (1984); State of Ohio Dept of Human Services v. U. S. Dep't of Health, 862 F.2d 1228 (6th Cir. 1988); Guardian Federal Savings & Loan Ass'n v. FSLIC, 589 F.2d 658, 664-665, 667 (D.C.Cir. 1978).

Moreover, requiring publication of these rules is no idle, technical requirement but rather is central to the purpose of the Administrative Procedure Act. In Dia Navigation Company, Ltd. v. Pomeroy, 34 F.3d 1255 (3d Cir. 1994), the court specifically looked to that purpose in determining that the challenged standards were required to have been published:

---

[7]Compare: "If [the disability] is due to old age, I was told not to accept it....My instructions...were major depression...is not a disability which would be acceptable for the medical waiver." Jasso Dep. 79-80.

>As the D.C. Circuit noted in *Batterton* [648 F.2d 694]: "Analysis...must focus on the underlying purposes of the procedural requirements at issue. The essential purpose of according § 553 notice and comment opportunities is to reintroduce public participation and fairness to affected parties after governmental authority has been delegated to unrepresentative agencies." 648 F.2d at 703. *See also Morton v. Ruiz*, 415 U.S. 199, 232, 94 S.Ct. 1055, 1073, 39 L.Ed.2d 270 (1974) ("The Administrative Procedure Act was adopted to provide, *inter alia*, that administrative policies affecting individual rights and obligations be promulgated pursuant to certain stated procedures so as to avoid the inherently arbitrary nature of unpublished *ad hoc* determinations.").

Id. at 1265. And again in <u>American Bus Association v. United States</u>, 627 F.2d 525 (D.C. Cir. 1980), the court looked extensively to the legislative history of Section 553 in finding that a "policy revision" which effectively changed the agency's application criteria was a normative rule which was required to be published:

>Section 553 was one of Congress's most effective and enduring solutions to the central dilemma it encountered in writing the APA – reconciling the agencies' need to perform effectively with the necessity that "the law must provide that the governors shall be governed and the regulators shall be regulated, if our present form of government is to endure." S. Doc. No. 248, 79th Cong., 2d Sess. 244 (1946), quoting H.R. Rep. No. 1149, 76th Cong., 1st Sess. 2 (1939). The "principal purpose" of section 553 was "to provide that the legislative functions of administrative agencies shall so far as possible be exercised only upon public participation on notice..." Id. at 257. Congress thus selected public participation in rule making as its means of assuring that an agency's decisions are both informed and responsive. As we have said before," if the Agency, in carrying out its 'essential legislative task.' has infused the administrative process with the degree of openness, explanation, and participatory democracy required by the APA, it will thereby have 'negate[d] the dangers of arbitrariness and irrationality in the formulation of rules...'" Wyerhaeuser Co. v. Costle, 590 F.2d 1011, 1027-28 (D.C. Cir. 1978).

627 F.2d at 528.

As stated in <u>American Bus Association</u>, It is precisely this desire to maintain these rules as "secret" that has created the arbitrariness and irrationality from which the plaintiff class has suffered. Plaintiffs are entitled to know the normative rules which are being applied to them.

7

They have a right to participate in the agency process which develops them. With respect to these "secret" rules involving "age" and depression" there is no dispute that it was not done. Plaintiffs are therefore entitled to summary judgment on their claims alleging violation of 5 U.S.C. § 552 and 5 U.S.C. § 553 plead in the second and third counts of their Amended Complaint.

## II. DEFENDANTS' FAILURE AND REFUSAL TO GIVE PLAINTIFFS ADEQUATE NOTICE OF THE BASES FOR THEIR DENIAL OF MEDICAL WAIVER REQUESTS AND THE STANDARDS USED TO DENY THEM VIOLATES THE ADMINISTRATIVE PROCEDURES ACT, 5 U.S.C. § 555(e) AND THE DUE PROCESS CLAUSE.

Both the APA, 5 U.S.C.§ 555(e), and the Due Process Clause of the Fifth Amendment require federal agencies to inform applicants why they are denied requested agency action. At 5 U.S.C. § 555(e) the APA specifically requires that any notice of denial "shall be accompanied by a brief statement of the grounds for denial." This requirement is not toothless. Not only must notice be given, it must be a meaningful, intelligible notice. For example, in Washington v. Office of Comptroller of the Currency, 856 F.2d 1507, 1513 (11th Cir. 1988), the Eleventh Circuit held a notice violated 5 U.S.C.§ 555(e) when it failed to provide a basis for understanding the "determinative reason" for the agency's decision. The Fifth Amendment's Due Process Clause requires both advance notice to applicants of the "rules" under which their applications will be decided and a statement of the reasons for rejection of their applications. Armstrong v. Manzo, 380 U.S. 545, 552 (1965) (notice required "at a meaningful time"); Cosby v. Ward, 843 F.2d 967, 984 (7th Cir. 1988) (notice that applicants were denied under agency rules "will be of little help" unless applicants know of rules in advance).

In this case, there is no dispute that plaintiffs were never informed at the outset of the

8

application process that defendants' Miami District Office utilized a set of "determinative rules" regarding age and depression in denying medical waiver requests. See § I, above. In fact, defendants' official policies and positions state otherwise. Supplemental Policy Guidance 312/97; 12/30/98 Mem. at 5-6.

Not only did defendants keep their determinative rules for deciding medical waiver requests secret, they also kept the reasons for their decisions on individual applications secret. Defendants have never had any policy, form or procedure by which they have even attempted to inform an applicant as to the reasons that the agency rejected their requests for medical waivers. See 12/30/98 Mem. 6-7; 8/11/98 Mem. 3. The only form of notice defendants ever gave to Miami District Office applicants were the two forms which appear in Exhibit F to the Deposition of Ricky Hamilton (attached to 8/11/98 Mem.) The first, which is defendants' actual notice of denial, merely states "Your application for naturalization and request for medical exception has been reviewed and the medical exception has not been accepted." The second, a request for additional medical information, is unintelligible. Rivera Dep. 122-123.

Nor is there any dispute that the defendants never told the individual plaintiffs that their medical waiver requests were denied because defendants disagreed with their treating physician (Rivera Dep. 108-109; Porter Dep. 107), perceived their disabilities to be related to age (see A-files of Amparo Campos, Angela Rodriguez, Juana Quintero, and Sofia Pardo), or because the claimed disability was major depression (see A-file of Juana Quintero).

Although defendants never informed applicants of the determinative reason for the decisions, in case after case, the Miami District Office meticulously recorded the determinative reasons for denial of the medical waiver requests in the applicant's A-file on internal INS

9

memoranda *that were never shared with the applicant or the public.* Tom Jasso testified that it was his practice to record the reason why an N-648 was rejected on an internal form in the A-file:

> Q. And looking at page 3195 [an example of the INS internal form, Exhibit C to the Jasso Deposition] again you have checked the N-648 was not accepted; correct?
> A. Correct.
> Q. And you write down there senile dementia. I take it that given your practice, that is the reason that you denied the N-648?
> A. Yes, sir.
> Q. And, again, that's because it was your instructions that senile dementia is not a qualifying disability?
> A. Yes, sir.
> Q. And the reason it is not a qualifying disability is because it is related to age?
> A. The instruction given to me was that senile dementia is due to old age and we do not accept a medical disability simply due to old age.

Jasso Dep. 88-89. See also Jasso Dep. 82 ("I made this decision [regarding Juana Quintero] on June 29th, 1998, and the reason I put down there is old age, major depression"); A-file of Juana Quintero at 1225 ("Old Age, Major Depression"); Jasso Dep. 89-92 and Exhibits D and E to that Deposition (recording as reasons for denial "senility (old age)" and "senile dementia").

Mr. Hamilton similarly recorded in the applicant's A-file the reason he rejected various N-648 requests for medical waivers:

> Q. On page 862 [of the A-file of Amparo Campos] the term old age is circled. Does that have any significance?
> A. That would be the reason it was not accepted.

Hamilton Dep. 113-114.

> Q. Can you tell me what the basis for your decision on [Sofia Pardo's] medical waiver request was?
> A. I had circled old age on 1175 [of the A-file of Sofia Pardo].
> Q. Is that why Miss Pardo's N-648 was not accepted?
> A. That would be the reason.

Hamilton Dep. 139-140. See also A-file of Sofia Pardo at 1179 ("Dementia").

> Q. Where does your decision appear [on Exhibit Z to the Deposition of Ricky Hamilton]?
> A. It says not accepted and I circled old age. It's on page 3106 I believe that is.
> Q. Was old age the basis for the denial of that individual's application?
> A. It was the basis of the non-acceptance on the N-648.

Hamilton Dep. 165. Similar testimony regarding Mr. Hamilton recording the reasons he rejected N-648s appears at pages 166-188 of his deposition (referencing Exhibits AA-PP to the deposition). See also A-file of Angela Rodriguez at 1113, 1116 ("due to old age").

Thus, as in Cosby v. Ward, 843 F.2d 967 (7th Cir. 1988), plaintiffs here have not only been denied notice of the reasons their particular applications were denied, they have also been denied notice of the secret "rules of thumb" utilized by the defendants in the determination, in violation of the most fundamental notion of due process. See also Gray Panthers v. Schweiker, 652 F.2d 146, 168-169 (D.C. Cir. 1980). As the District of Columbia Circuit recognized in Gray Panthers, the plaintiffs' ages and infirmities merely accentuate the need for especially clear notice to individuals about the bases for the agency decision. Id.

In granting plaintiffs' Motion for Preliminary Injunction in this case, this Court recognized that it is "axiomatic that the most minimal 'fair procedures' required by due process include a meaningful notice." Order Granting Plaintiffs' Motion for a Preliminary Injunction, October 16, 1998, Slip op. at 21, citing Mathews v. Eldridge, 424 U.S. 319, 348 (1976). Because the notice procedures utilized by defendants fall so far short of the minimally fair mark established by the Constitution and the APA, plaintiffs are entitled to judgment as a matter of law on their due process and 5 U.S.C. § 555(e) claims.

### III. DEFENDANTS' "AGE-RELATED" AND DEPRESSION RULES VIOLATE § 504 OF THE REHABILITATION ACT

As clearly shown above and in the Statement of Undisputed Material Facts filed contemporaneously with this Memorandum, in administering the medical waiver program in Miami, defendants maintained a policy and practice to exclude from its benefits persons suffering disabilities which are caused by, related to, or associated with advanced age as well as persons suffering from major depression. The denial of the benefits of the waiver program to such individuals was based solely on the type of disability, and was completely without regard to the impact of the disability on the individual's ability to learn English or civics. See Jasso Dep. 78-80. As defendants' own expert, Dr. Ada Rivera, acknowledged, there is no *medical* basis for treating persons suffering from a disability that is related to age differently than if the disability is caused by another factor. Rivera Dep. 127-128. Nor is major depression recurrent a "simple" depression that should prevent an individual from being considered for a medical waiver since major depression can interfere with an individual's ability to learn English. Rivera Dep. 66-67.

The Miami District Office's wholesale discrimination against individuals with age or depression related disabilities without considering the disabilities on a case by case basis like any other medically determinable disability violates of § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. L.C. v. Olmstead, 138 F.3d 893, 900-901 (11th Cir. 1998), cert. granted __ U.S. __ (1998)[8]; Helen L. v. DiDario, 46 F.3d 325, 336 (3d Cir. 1995); Martin v. Voinovich,

---

[8] In the Olmstead case, the Eleventh Circuit was construing the Americans with Disabilities Act, 42 U.S.C. § 12131-12134. However, the statutory and regulatory construction for the ADA and the § 504 of the Rehabilitation Act are the same. Olmstead, 138 F.3d at 897-898.

12

840 F.Supp. 1175, 1191-1192 (S.D. Ohio 1993) (discrimination on the basis of the severity or type of the handicap actionable under § 504). Plaintiffs are therefore entitled to summary judgment on their eighth claim for relief alleging a violation of § 504 of the Rehabilitation Act.

### IV. DEFENDANTS HAVE VIOLATED THE IMMIGRATION AND NATIONALITY ACT, 8 U.S.C. § 1423(b)(1), AND ITS IMPLEMENTING REGULATIONS

As this Court recognized in granting plaintiffs' Motion for Preliminary Injunction,

A fundamental principle of federal law is that a federal agency must follow its own rules. Morton v. Ruiz, 415 U.S. 199, 233-235 (1974) ("[W]here the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures.").

> The failure of an agency to follow its own regulations constitutes arbitrary and capricious conduct. Boyd v. Secretary of Agriculture, 459 F.Supp. 418 (D.S.C.1978). The courts must overturn agency actions which do not scrupulously follow the regulations and procedures promulgated by the agency itself. U.S. v Heffner, 420 F.2d 809, (4th Cir. 1969)...

Simmons v Block, 782 F.2d 1545, 1550 (11th Cir. 1986).

Order Granting Plaintiffs' Motion for Preliminary Injunction, October 16, 1998, Slip op. at 17-18.

Here, the appropriate process for requesting a medical waiver as well as the standards defendants are <u>supposed</u> to employ in deciding the requests are clear from statute, regulation and official agency interpretation, and defendants published their extensive agency interpretation (the Supplemental Policy Guidance 3/12/97) in the Federal Register. The defendants' interpretation of its own regulations as set forth in the published Supplemental Policy Guidance is entitled to great deference and absent clear conflict should be accepted by the court. Wells v. F.A.A., 755 F.2d 804 (11th Cir. 1985); Booth v. United States, 956 F.2d 1171 (11th Cir. 1993).

According to defendants' published interpretation, once an applicant has submitted a

13

completed N-648 certification, the defendants and their officers <u>must accept</u> the certification of the medical professional unless there is cause to doubt its veracity. Absent a case of suspected fraud, if there is cause to doubt the veracity of the medical professional, the only options available to the examining officer are to attempt to resolve the doubts in favor of the applicant or to request a second certification. On no occasions are defendants to second guess the medical professional's judgment or to substitute their judgment for that of the certifying medical professional. Supplemental Policy Guidance 3/12/97.

While it is obvious from the statute, regulation and the published Supplemental Policy Guidance that there are no disabilities which automatically disqualify (or qualify) an applicant from consideration for a medical waiver[9], recently defendants have issued (although they have not published) guidance to clarify that <u>all</u> medically determinable disabilities, including those related to, resulting from or associated with advanced age and depression should be considered "like any other disease or disability and evaluated based on the standard under section 312." 12/30/98 Mem.

Despite these clear standards, the Miami District Office decides medical waiver under rules, practices and procedures that bear absolutely no resemblance to those expressed to the public. The secret Miami rules regarding age and depression have been extensively discussed elsewhere in plaintiffs' moving papers and will not be repeated here. In addition, at least during the three month pilot program in which the Miami District Office was assisted by the Public Health Service, the Miami Office utilized yet another undisclosed rule in reviewing N-648s

---

[9]Except for those limited circumstances in which the individual's disability was caused by illegal drug use. 8 C.F.R. §§ 312.1(b)(3), 312.2(b)(2).

14

which directly conflicted with defendants' stated procedures. Miami District Office personnel denied requests for a medical waiver based on *disagreement* with the medical judgment of the medical professional expressed on the N-648, despite a published standard to the contrary. Compare Supplemental Policy Guidance 312/97 at 7 with Porter Dep. 107 ("Q: Well, did you disagree with the doctor's conclusion? A: Yes.") Indeed, defendants' expert, Dr. Ada Rivera, required extensive medical histories and testing before she would recommend that an N-648 be accepted *even though the request for such information is not contemplated by the N-648 form, the instructions for completing it or defendants' published standards.* For example, Dr. Rivera testified that before she would recommend that a medical waiver be granted based on dementia,

> I would want to see [a] mental heath evaluation, either by a psychologist or a psychiatrist, I would want to see laboratories that would rule out problems with their thyroid, problems with -- sometimes, you know, renal problems can give that problem, problems, any problems, any physical problems that could affect the brain in such a manner that could cause this. I would like to see that information. And then also we would usually in most circumstances we would be looking at a CT scan of the brain to see if they had cerebral atrophy or changes in the cerebral cortex.

Rivera Dep. 69-70. Before recommending the approval of a medical waiver request based on circulatory problems,

> That's where you would do a conduction study. That's where the person would walk around with a Holter for a period of time to see if they had any arrhythmias during a 24-hour period, and we would want to see that, plus EKGs, plus a general status explanation of how the patient has done over a period of time to determine if the cardiac arrhythmias are affecting their brain in such a way that they wouldn't be able to learn English, or if it's just an episode that's happening now, but with medication that person is well. Things like that.

Rivera Dep. 71-72. With respect to Parkinson's disease and cardiomyopathy:

> With the cardiomyopathy we would probably be asking for more heart studies as far as echocardiograms to see the functioning of the ventricles and to see how extensive the damage is because based on that, that is whether the flow of the

15

> circulation up to the brain is affecting the oxygen is not enough and all of these things can affect the learning process. The other thing is if the patient is on a lot of medications and they can't -- their movement, their getting up and moving around is very difficult because of shortness of breath and things like that. So we would want to know a general history, a probably more in-depth history and studies on the heart before we would consider that pure cardiomyopathy would be disabling. And Parkinson's, of course...it depends on what stage you're at, how advanced[,] to see if the brain is affected in such a way that they wouldn't be able to concentrate.
> Q: What would you want to see to determine how advanced it is?
> A: History, more history of what's going on, and then neurological studies, CT scan of the brain and some neurological evaluations by a neurologist.

Rivera Dep. 76-77.

Thus, defendants' Miami District Office completely violated defendants' espoused principles in determining medical waiver requests. There is simply no dispute that defendants have second guessed the certifying medical professionals, denied completed N-648s and failed to request second medical opinions *all despite the fact that fraud was never suspected*. Defendants further unabashedly discriminated against persons seeking a medical waiver whose disabling conditions were related to advanced age or depression, irrespective of the impact those disabilities had on the individual's ability to learn. Plaintiffs are therefore entitled to judgment in their favor based on the agency's "deviation from its own regulations and procedures", Haitian Refugee Center v Smith, 676 F.2d 1023, 1041 (5th Cir. Unit B 1982). See also Jean v Nelson, 727 F.2d 957 (11th Cir. 1984), aff'd 472 U.S. 846 (1985); Nicholas v. INS, 590 F.2d 802, 809, (9th Cir. 1979); Louis v. Nelson, 544 F.Supp. 973 (S.D.Fl. 1982); Tefel v. Reno, 972 F.Supp. 608 (S.D.Fl. 1997).

## V. DEFENDANTS' CONDUCT VIOLATES THE ADMINISTRATIVE PROCEDURES ACT, 5 U.S.C. § 706(2)(A).

As plaintiffs have shown above, defendants violated their own regulations and procedures, the rulemaking provisions of the APA, the Freedom of Information Act, the Fifth Amendment's guarantee of Due Process and § 504 of the Rehabilitation Act. Each of these violations of law also violates the Administrative Procedures Act in that the agency's action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law". 5 U.S.C. § 706(2)(A). Policies or practices of the INS which fail to follow the statutory or regulatory law (including INS interpretations of the law) violate the Administrative Procedures Act ("APA"), 5 U.S.C. § 701, et seq.; Jean v. Nelson, supra.; Haitian Centers Council, Inc. v. Sale, 823 F.Supp. 1028 (E.D.N.Y. 1993).

> Where judicial review includes actions taken pursuant to agency regulations, validly promulgated regulations have the force of law. Frisby v. United States Dep't of Hous. & Urban Dev., 755 F.2d 1052, 1055 (3d Cir. 1985). When an agency fails to act in compliance with its own regulations, such actions are "not in accordance with law." Id. at 1055-56 (citations and quotations omitted).

Raymond Proffit Foundation v. U.S. Environmental Protection Agency, 930 F.Supp. 1088, 1104 (E.D.Pa. 1996).

Plaintiffs are entitled to judgment as a matter of law for defendants' violation of the APA, 5 U.S.C. § 701, et seq.

### CONCLUSION

Because under the law applicable to this case "there can be but one reasonable conclusion as to the verdict," Anderson, 477 U.S. at 250, plaintiffs respectfully request that this Court enter judgment in their favor based on defendants' violations of the rulemaking provisions of the Administrative Procedures Act, 5 U.S.C. § 553, the Freedom of Information Act, 5 U.S.C. §

552(a)(2), the Due Process Clause of the Fifth Amendment, § 504 of the Rehabilitation Act, 29 U.S.C. § 794, the Immigration and Nationality Act, 8 U.S.C. § 1423(b)(1) and implementing regulations and the Administrative Procedures Act, 5 U.S.C. § 701, et seq.

Respectfully submitted,

JoNel Newman, Esq.
Peter M. Siegel, Esq.
Randall C. Berg, Jr., Esq.

Florida Justice Institute, Inc.
200 South Biscayne Boulevard, #2870
Miami, Florida 33131-2309
(305) 358-2081
(305) 358-0910 - facsimile


Charles F. Elsesser, Jr., Esq.

Florida Legal Services
3000 Biscayne Blvd.
Miami, FL 33137
(305) 573-0092
(305) 576-9664 - facsimile


Joan Friedland, Esq.
Cheryl Little, Esq.
Lisette Losada, Esq.

Florida Immigrant Advocacy Center
3000 Biscayne Blvd.
Miami, FL 33137
(305) 573-1106
(305) 576-6273 - facsimile

Attorneys for Plaintiffs

By: /s/ JoNel Newman
    JoNel Newman, Esq.
    Florida Bar No. 0112320

18

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed to Dexter A. Lee, Assistant U.S. Attorney, 99 N.E. 4th Street, Miami, FL 33131 and Teresa Wallbaum, Office of Immigration Litigation, U.S. Department of Justice, P.O. Box 878, Ben Franklin Station, Washington, D.C. 20044 on this 12th day of February, 1999.

By: *JoNel Newman*
JoNel Newman, Esq.
Florida Bar No. 0112320