UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

99 FEB 12 PM 4: 21

AMPARO CAMPOS, et al., )
) Case No. 98-2231-CIV-GOLD
Plaintiffs, ) Magistrate Judge Turnoff
)
vs. )
) **PLAINTIFFS' STATEMENT OF**
IMMIGRATION AND NATURAL- ) **UNDISPUTED MATERIAL FACTS**
IZATION SERVICE; et al., ) **IN SUPPORT OF MOTION**
) **FOR SUMMARY JUDGMENT**
Defendants. )
_____)

### The Naturalization Process

1. Individuals applying to become naturalized citizens of the United States are required to complete and submit an N-400 citizenship application to the Immigration and Naturalization Service ("INS"). 8 U.S.C §1445(a); 8 C.F.R. § 334.2.

2. After receiving the N-400, INS conducts a background investigation of the applicant, including review of all pertinent records, police department checks, and, unless waived by the Attorney General, a neighborhood investigation. 8 U.S.C § 1446(a); 8 C.F.R. § 335.1.

3. Following the investigation, the naturalization applicant is interviewed and examined by an INS officer. To become a citizen, at that interview an applicant for naturalization must demonstrate (unless exempted) "an understanding of the English language, including an ability to read, write and speak words in ordinary usage...", 8 U.S.C.§1423(a)(1) ("English"), and a "knowledge and understanding of the fundamentals of the history, and of the principles and form of government of the United States" 8 U.S.C.§1423(a)(2) ("civics").

4. In 1993, Congress amended the Immigration and Nationality Act to provide for a medical waiver or exemption from the English and civics examination at the INS interview.

Pursuant to the amendment's terms, the "English language" and "history and civics" requirements "shall not apply to any person who is unable because of physical or developmental disability or mental impairment to comply therewith." 8 U.S.C.§ 1423(b)(1).[1]

5. On March 19, 1997 INS issued regulations implementing the "medical waiver exemption" law. 62 Fed. Reg. 12915 (Mar. 19, 1997) (final rule).

### The Medical Waiver Exemption Process

6. The medical waiver exemption process is governed by INS's final regulation, 8 C.F.R. § 312 et seq. and implementing policies, including the Supplemental Policy Guidance dated 3/12/97, which defendants published in the Federal Register, 62 Fed. Reg. 12915 (Mar. 19, 1997), and was previously filed on September 22, 1998 as Appendix I to Plaintiffs' Memorandum of Law in Support of Plaintiffs' Emergency Motion for a Temporary Restraining Order and/or Preliminary Injunction (hereinafter "Supplemental Policy Guidance 3/12/97"); the Memorandum "To clarify INS policy on the processing of form N-648 Medical Certifications for Disability Exceptions," dated 8/11/98, Exhibit F to the Deposition of Ricky Hamilton, copy submitted as Exhibit 1 with Plaintiffs' Notice of Filing provided contemporaneously with this Motion, (hereinafter "8/11/98 Mem."); and the Memorandum "Section 312 Disability Naturalization Adjudications," dated 12/30/98, previously filed on January 19, 1999 as Exhibit A to Defendants' Opposition to Plaintiffs' Motion to Certify the Class, (hereinafter "12/30/98

---

[1] There are also two other bases for exemption from portions of the examination which are not at issue in this litigation. Pursuant to 8 U.S.C. § 1423 (b)(2)(A) and (B), persons who are over fifty (50) years of age and have been living in the United States for twenty (20) years since becoming a permanent resident or are over fifty-five (55) years of age and have been living in the Unites States for fifteen (15) years since becoming a permanent resident are exempt from the English language and civics requirements.

Mem.").

7. A naturalization applicant requests a medical waiver by filing a form N-648 which has been completed by a medical doctor or clinical psychologist ("medical professional") licensed to practice in the United States. Supplemental Policy Guidance 3/12/97 at 4. The critical question to which the medical professional is required to respond on that form requests the following information:

> 3. Based on your examination, describe any findings of a physical or mental disability or impairment which, in your professional medical opinion, would prevent this applicant from demonstrating knowledge of basic English language and/or U.S. history and civics. Describe in detail. If applicant has a mental disability or impairment, please provide DSM diagnosis.

Form N-648; 12/30/98 Mem. 3 ("The most important question on the Form N-648 is...Question 3"). The medical professional is also required to provide his or her office address, license number, qualifications, date of last examination of the applicant, whether the applicant's disability results from illegal drug use, is temporary or permanent, and whether, if the applicant is developmentally disabled, the disability manifested itself before age 22.

8. "It is the responsibility of the medical professional to make the medical determination." Supplemental Policy Guidance 3/12/97 at 7. The "medical professionals shall be experienced in diagnosing those with physical or mental medically determinable impairments" and shall also be able to "attest to the origin, nature and extent of the medical condition as it relates to the disability exceptions". 8 C.F.R. § 312.2(b)(2).

9. INS officers reviewing the medical waiver requests are reminded by defendants' policy that they "are not medical professionals, advocates, or social workers and should not place themselves in the position of attempting to second guess the medical evaluation of the

qualified medical professional certifying a disability exception on the N-648. Nor should the officers place themselves in the position of being a medical professional and thereby denying the existence of a disability." Supplemental Policy Guidance 3/12/97 at 7.

10. The role of the INS officer in reviewing and deciding whether to accept the N-648 is essentially to determine if the form is complete and properly filled out by an appropriate medical professional. Supplemental Policy Guidance 3/12/97 at 7; 8/11/98 Mem. 3; Deposition of Ricky Hamilton at 97, previously filed with this Court on December 18, 1998 by Plaintiffs' Notice of Filing (hereinafter "Hamilton Dep.").

11. While "old age" does not qualify as the basis for a medical waiver, "an individual with a disease or disability that is related to, associated with, or caused by old age" may qualify for the exception, the same as any other disease. 12/30/98 Mem. 5.

12. Similarly, "depression should be treated like any other disease or disability and evaluated based on the standard under section 312." 12/30/98 Mem. 6.

The Miami District Office Practices

13. In the INS's Miami District Office, a Supervisory District Adjudications Officer ("SDAO") made the decision on each medical waiver request that came into the office. There are eight (8) SDAOs assigned to the naturalization unit of the Miami District Office. Deposition of Elaine Watson (submitted contemporaneously with this motion as Exhibit 2 to Plaintiffs' Notice of Filing), at 15-18 (hereinafter "Watson Dep"). Elaine Watson is the Director of the Miami District Office Naturalization Unit. Watson Dep. at 13-14.

14. SDAO Ricky Hamilton was assigned primary responsibility for implementing the office's medical waiver process. He served as the Miami District Office's "expert" on medical

waiver requests. Watson Dep. 92. Mr. Hamilton was the only SDAO to attend the initial training in Washington, D.C. regarding the medical waiver criteria. Watson Dep. 37, 41. He was subsequently put in charge of the medical unit of the Naturalization Section of the Miami District and was also responsible for the training and instruction of the other SDAOs with respect to the medical waiver procedures. Supplemental Policy Guidance 3/12/97 at 5; Watson Dep. 62, 81.

15. N-648s received by the Miami District Office at the applicant's interview were decided by the SDAO (under Mr. Hamilton's supervision) who was assigned to "the floor" of the naturalization unit on the day of the interview. Hamilton Dep. 18. If the N-648 was not accepted at the interview, the applicant was given what defendants termed a "60 day letter." Hamilton Dep. 49-50; Watson Dep. 88; 8/11/98 Mem. In response to that "letter" the applicant was expected to return a new N-648 to the Miami District Office by mail. Hamilton Dep. at 13. Elaine Watson set up a special post office box for receiving N-648 forms. Watson Dep. 84.

16. All N-648s received by mail, whether as an initial request for a medical waiver or as a response to a 60 day letter, were sent to the medical unit and were decided by Mr. Hamilton. Hamilton Dep. 13. If an N-648 was not accepted, the Miami District Office notified applicants of the denial with the notice of the applicant's next interview. Watson Dep. 106; 8/11/98 Mem. The notice of denial did not provide the reasons for denial. Id.

17. During a three month period, from August 1998 to November 1998, the Miami District Office was assisted by Public Health Service ("PHS") officers in deciding medical waiver requests. The individual assigned by PHS to the Miami District Office was Terry Porter, R.N. Deposition of Terry Porter at 11, filed contemporaneously with this Motion as Exhibit 3

5

to Plaintiffs' Notice of Filing, (hereinafter "Porter Dep."). Ms. Porter's work was supervised by Ada Rivera, M.D., who never went to the Miami District Office naturalization unit. Deposition of Ada Rivera at 22-23, previously submitted to this Court by Notice of Filing on December 18, 1998 (hereinafter "Rivera Dep."). These PHS officers made recommendations concerning medical waiver requests but had no authority to accept or reject them. Watson Dep. 157; Hamilton Dep. 38; Rivera Dep. 58-59. That task remained at all times the responsibility of the SDAOs in the Miami District Office, particularly Mr. Hamilton. Hamilton Dep. 56.

<u>In The Miami Office Defendants Have Denied Over 3,500 Medical Waiver Requests.</u>

18. From March 1997 through October 1998, defendants processed over 6,000 requests for medical waivers in the Miami District Office of the INS. Defendants' Production Response #16, and Disability Exceptions Log, previously filed by Notice of Filing on December 18, 1998.

19. Defendants' Miami Office denied 61.5% of these medical waiver requests. Declaration of Elaine D. Watson, previously filed on October 6, 1998 as Exhibit A to Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction.

<u>Defendants Used Secret Rules In Denying The Requests Processed In The Miami Office.</u>

20. In reviewing the more than 6,000 requests for medical waivers presented in Miami, defendants' Miami District Office personnel applied a rule which required them to deny requests for medical waivers that were based on a disability which was related to, associated with, or caused by old age. Hamilton Dep. 70-74, 113-115, 127-128, 165, 166-167, 169, 171, 172, 173, 183-184, 185; Rivera Dep. 61-63; Watson Dep. 197-198; Deposition of Tom Jasso at 81-90, submitted contemporaneously with this Motion by Notice of Filing as Exhibit 4 (hereinafter "Jasso Dep."). *Cf.* 12/30/98 Mem. at 5. Defendants never published this rule concerning "old

age" in the Federal Register or otherwise provided it to the public. *Cf.* 12/30/98 Mem. at 5.

21. The standards used in reviewing requests for medical waivers in Miami also included denying requests for medical waivers in which depression was the claimed disability. Hamilton Dep. 69-70, 114-115, 119-120, 187-192; Jasso Dep. 80, 83, 87, 94. *Cf.* 12/30/98 Mem. at 6. Defendants never published their rule regarding depression in the Federal Register or otherwise provided it to the public.

Defendants Did Not Follow Their Own Published Rules In Denying The Requests.

22. The Miami District Office's secret rules described above violate defendants' published rules and interpretations. 12/30/98 Mem. at 5 and 6.

23. Only one or two weeks after the medical waiver request program went into effect in March 1997, defendants' Miami District Office personnel abandoned defendants' stated policy (Supplemental Policy Guidance of 3/12/97) of speaking with the medical professional who completed the form N-648 request for medical waiver to answer any questions the reviewing INS officer may have. Hamilton Dep. 100-104.

24. Defendants' Miami District Office personnel never complied with defendants' stated policy (Supplemental Policy Guidance 3/12/97) of contacting another state or federal government agency which had declared the applicant disabled to clarify any questions which the INS officer may have concerning the applicants' disability. Hamilton Dep. 103-104.

25. In denying medical waiver requests in Miami, defendants' officers and agents second-guessed medical determinations of certifying medical professionals, substituting their medical judgment for that of the certifying medical professional. Porter Dep. 105-107; Rivera Dep. 108-109.

26. Defendants never had applicants requesting a medical waiver examined by a medical professional on behalf of INS, and referred applicants to another doctor only on the extremely rare occasions when fraud was suspected. Hamilton Dep. 105.

27. Defendants did not suspect fraud of any of the named plaintiffs or their medical professionals, Hamilton Dep. 121, 131, 134, 139, 141, and have suspected fraud from less than 20 medical professionals in total. Hamilton Dep. 80-82.

### Defendants Never Told Applicants Why Their Requests Were Denied.

28. The only type of notice that defendants' Miami District Office personnel have ever provided to applicants concerning their medical waiver requests are the two attachments to the August 11, 1998 Memorandum. The first merely notifies applicants that their medial waiver request "has not been accepted" and they must pass the examination. Watson Dep. 106-107. The second attachment, termed a "60 day letter," purports to be a notice requesting additional information from the medical professional. Hamilton Dep. 49-50.

29. A medical professional would not understand what was being requested to cure the deficiencies by that notice. Rivera Dep. at 122-123. *Cf.* 12/30/98 Mem. at 6. Nor is such a notice intelligible to applicants, their families or their representatives. Declaration of Iris Pulido at ¶ 12, previously submitted to this Court on September 22, 1998 as Exhibit A to Plaintiffs' Notice of Filing (hereinafter "Pulido Dec."); Declaration of Josephina Lopez at ¶ 7, previously submitted to this Court on September 22, 1998 as Exhibit I to Plaintiffs' Notice of Filing (hereinafter "Lopez Dec.").

30. If a new or additional N-648 is returned in response to the 60 day letter and is denied a second time, the applicant is then tested in English and civics and if they fail either of

those tests they are denied naturalization. At that time the applicant simply receives a notice that naturalization has been denied. The applicant receives no notice as to why the second or amended N-648 was rejected. Jasso Dep. 43-44.

### The Defendants Denied The Requests Of The Class Representatives Consistent With Defendants' Secret Rules And Disregard Of Defendants' Published Rules, And Failed To Give Plaintiffs Notice Of The Reasons For The Denials.

#### Amparo Campos.

31. Plaintiff Amparo Campos is an eighty-two (82) year old legal permanent resident who applied for United States citizenship in 1996. Defendants' Corrected Answer to Complaint (hereinafter "Ans.") ¶6, Alien "A-" file of Amparo Campos, Exhibit 5 to Plaintiffs' Notice of Filing submitted contemporaneously with this Motion. In connection with her citizenship application, Ms. Campos applied for a medical waiver to excuse her from the English and Civics requirements of the naturalization examination. Ans. ¶36. She submitted at least three requests for a medical waiver. Ans. ¶37, 38, 40. On the last of those requests, Ms. Campos's psychiatrist certified:

> This patient has a psychiatric history for the past 16 years without any psychiatric hospitalizations. Currently she presents with diagnosis of 1) major depression, recurrent moderate 296.32, 2) generalized anxiety 300.02 and 3) cognitive disorder 294.9. With respect to the patient's diagnosis of cognitive disorder, the patient reports increasing forgetfulness, i.e. forgetting appointments and getting lost on the streets if left alone. The patient tested on the Folstein, scoring an 18 from 30 possible points. This score indicates that the patient has dementia. Poor cognition is symptom of dementia. Dementia cannot be cured and only progressively gets worse. Due to this diagnosis she is unable to retain anything studied for any length of time.

Ans. ¶ 40.

32. Although Ms. Campos's medical waiver request was complete and properly filled out by the medical professional, Watson Dep. at 186, defendants denied Ms. Campos's medical

9

waiver requests because she suffered from depression and because they believed her disabilities were age related. Hamilton Dep. at 107-115. Ms. Campos was then denied citizenship because she could not speak English. Ans. ¶41.

33. In denying Ms. Campos' request for a waiver, defendants did not speak to any of the three medical professionals who had certified that her disabilities prevented her learning English and Civics. Hamilton Dep. 121. Nor did they ever request from any of the medical professionals who made the disability certifications a production of supplemental records from the applicant's medical files. Ans. ¶42. Neither did they have Ms. Campos examined by any other medical professional. Ans. ¶42, Hamilton Dep. 105.

34. At no time prior to or following their rejection of Ms. Campos's N-648 did defendants provide her, her representatives or her family with the bases for the rejection or the fact that defendants' Miami District Office did not accept requests for medical waiver if the disability resulted from or was associated with advanced age or depression. A-file of Amparo Campos and 12/30/98 Mem. at 5-6. Nor did defendants ever publish their age-related and depression standards in the Federal Register or otherwise provide them to the public.

### Hector Corella

35. Hector A. Corella is a 95 year old legal permanent resident who applied for United States citizenship in 1995. Declaration of Hector J. Corella previously submitted on September 22, 1998 as Exhibit K to Plaintiffs' Notice of Filing (hereinafter "Corella Dec."), ¶5. In connection with his citizenship application, Mr. Corella applied for a medical waiver to excuse him from the English and Civics requirements of the naturalization examination. Corella Dec. ¶5. His request for a medical waiver was based on his suffering from organic brain syndrome

and senile dementia as well as arterial hypertension which reduces the blood supply to his brain. Corella Dec. ¶8. His doctor completed the required form stating that "Mr. Corella's dementia prevents him from demonstrating knowledge of basic English language skills and U.S. history and civics." Defendants denied Mr. Corella's medical waiver request. Corella Dec. ¶9.

36. In all likelihood, defendants denied Mr. Corella's request for a medical waiver because defendants did not consider senile dementia to be a qualifying disability.[2] Hamilton Dep. 166-167, 185; Jasso Dep. 84.

37. At no time prior to or following their rejection of Mr. Corella's medical waiver request did defendants provide him, his representatives or his family with the bases for the rejection or the fact that defendants' Miami District Office did not accept requests for medical waiver if the disability resulted from advanced age (such as senile dementia). Corella Dec. ¶9; 12/30/98 Mem. at 5-6. Nor did defendants ever publish these age-related standards in the Federal Register or otherwise provide them to the public.

### Angela Rodriguez

38. Plaintiff Angela Rodriguez is a seventy-eight (78) year old legal permanent resident who applied for naturalization in February 1997. Ans. ¶8, 53, 54. She accompanied the application with a request for a medical waiver. Ans. ¶54. She subsequently submitted two N-648 forms requesting a medical waiver. Ans. ¶55, 60. Ms. Rodriguez's doctor certified that:

> Ms. Angela Rodriguez has been my patient for approximately three years. She is an elderly 78 year-old woman who is suffering from a difficult combination of ailments including Organic Brian Syndrome (Diagnosis 310.9), and Arterial Hypertention (401.9). Her conditions are complicated by a recent Right Hip Operation and deteriorating general health associated with the normal aging

---

[2] Defendants have not produced Mr. Corella's A-file, claiming it cannot be located.

11

> process. She looks much older than indicated by her chronological age. This patient has been unable to walk for over two years and is wheel chair confined. The complex combination of ailments above described have resulted in a progressive deterioration of her cognitive functions with a decline in functional level[,] poor memory and poor concentration. Though she is aware of her surroundings and is still able to express herself with limited clarity, she requires constant supervision and is unable to care for herself. Under these conditions, this patient's potential for learning complicated new material such as a new language and/or replying to an interrogatory in a foreign language are practically nil....Based on the above, it is my professional Medical opinion, that Angela Rodriguez is unable to learn even basic English, let alone U.S. Civics or history, and that it is no fault of her own that she can not comprehend an examination to demonstrate basic knowledge of the English language.

Ans. ¶ 55; A-file of Angela Rodriguez, Exhibit 6 to Plaintiffs' Notice of Filing submitted contemporaneously with this Motion. Ms. Rodriguez's request form was complete and properly filled out by her doctor, containing all the information requested on the form. N-648 form dated 6/3/98, previously filed with this Court on September 22, 1998 as Exhibit B to Plaintiffs' Notice of Filing.

39. Defendants denied Ms. Rodriguez's medical waiver requests because they believed her disabilities were age related. Hamilton Dep. 127-130.

40. In denying Ms. Rodriguez's request for a waiver, defendants did not speak to the medical professional who had certified that her disabilities prevented her learning English and Civics. Affidavit of Dr. Miguel Mier previously submitted on October 6, 1998. Neither did they have Ms. Rodriguez examined by any other medical professional. Hamilton Dep. 105.

41. At no time prior to or following their rejection of Ms. Rodriguez's N-648 did defendants provide her, her representatives or her family with the bases for the rejection or the fact that defendants' Miami District Office did not accept requests for medical waiver if the disability resulted from or was associated with advanced age. Pulido Dec ¶ 12. Nor did

defendants ever publish these age related standards in the Federal Register or otherwise provide them to the public.

42. The one document provided to Ms. Rodriguez by defendants which purported to notify her of the deficiencies in her medical waiver request so that she could correct them was the "60 day letter" dated 6/5/98, previously submitted to this Court on September 22, 1998 as Exhibit C to Plaintiffs' Notice of Filing, which checked off every item on the form, including requesting her name. Ans. ¶59. Nowhere on the form were specific medical records or information identified that would communicate to a treating physician what additional medical information defendants required. Rivera Dep. 122-123. The notice was unintelligible to Ms. Rodriguez and her family, Pulido Dec. ¶ 12, as well as to her physician, Declaration of Dr. Miguel Mier, previously filed with this Court on October 6, 1998 as Exhibit O to Plaintiffs' Notice of Filing at ¶ 5.

### Josefina Lopez

43. Plaintiff Josefina Lopez is 84 years old and applied for United States citizenship in March, 1997 at the age of 83. Ans. ¶9, 64. She submitted an N-648 form requesting a medical waiver. Ans. ¶64. The form states that Ms. Lopez suffers from a number of complicated cardiac and circulatory insufficiency abnormalities which affect normal blood flow to all parts of the body, including major organs and the brain, and that as a result of the conditions and the medication prescribed for them, Ms. Lopez is prone to lethargy and syncopal episodes with marked diminution of cognitive functions: reasoning ability, judgment and memory. The form also explains that Ms. Lopez' prescribed medication can also produce severe physiological and psychological side effects, including but not limited to: confusion, restlessness, agitation,

tiredness and unusual weakness, loss of appetite, nausea, vomiting, changes in heart rhythms and changes in vision. Ans. ¶ 64; A-file of Josefina Lopez, Exhibit 7 to Plaintiffs' Notice of Filing submitted with this Motion.

44. This N-648 form was properly completed, A-file of Josefina Lopez. The medical professional completing it is board-certified in internal medicine and certified on the form that, in his professional medical opinion, Ms. Lopez is not capable of learning and retaining new material at this stage of her ailment and therefore is unable to learn written or spoken English. Ans ¶ 65.

45. Defendants denied Ms. Lopez's medical waiver request because the Public Health Service recommended that the request not be accepted, and possibly also because Ms. Lopez's doctor stated that her disabilities were expected to worsen due to her age. Hamilton Dep. 132-134.

46. The Public Health Service employees recommended that Ms. Lopez's medical waiver request not be accepted because Terry Porter, the Public Health Service nurse reviewing the request, didn't think that heart problems are "enough to cause memory problems", Porter Dep. at 105-106, and because she disagreed with Ms. Lopez's doctor's conclusion about the severity of Ms. Lopez's ailment. Porter Dep. p. 107. Dr. Ada Rivera, the PHS medical doctor reviewing Porter's recommendation, concurred with Porter's recommendation to deny the request, and she also disagreed with Ms. Lopez's doctor's conclusions and treatment. Rivera Dep. 108-109. Neither Terry Porter nor Ada Rivera examined Ms. Lopez, spoke to her treating physician, or reviewed her medical records. Rivera Dep. 105-106, 114-115, Porter Dep. 103-4, 112, 114.

47. At no time prior to or following their rejection of Ms. Lopez's N-648 did defendants provide her, her representatives or her family with the bases for the rejection, the fact that the Public Health Service required additional specific information from her physician, and that defendants' Miami District Office did not accept requests for medical waiver if the disability resulted from or was associated with advanced age.   Lopez Dec. ¶¶6, 7.  Nor did defendants ever publish these age related standards in the Federal Register or otherwise provide them to the public.

### Juana Quintero

48. Plaintiff Juana Quintero is a 62 year old legal permanent resident who applied for citizenship in September, 1996.  Ans. ¶10, 70, 72.  In connection with her citizenship application, Ms. Quintero submitted three requests for a medical waiver to excuse her from the English and Civics requirements of the naturalization examination.  Ans. ¶73, 74, 78.  The requests included an attestation by Ms. Quintero's physician that:

> Mrs. Quintero is a 62-year old woman with a history of Chronic Hypertension (ICD 401.9) and Major Depression, recurrent (ICD 296.3).  She suffers from severe, progressive memory loss, all part of her progressive Dementia secondary to Hypertension and Depression.  Tests of her orientation, attention, and recall demonstrate significant impairment associated with her Chronic Hypertension and Dementia.  Her severe Depression also markedly interferes with her ability to concentrate and to remember newly-learned information.  These conditions make it impossible for Mrs. Quintero to learn History and Civics for Naturalization purposes.  Learning English is also out of the question.

A-file of Juana Quintero, Exhibit 8 to Plaintiffs' Notice of Filing submitted with this Motion.

49. Defendants denied Ms. Quintero's medical waiver requests because she suffered from major depression and because of her advanced age.  Jasso Dep. at 82-83.  Ms. Quintero was then denied citizenship because she could not speak English.  Ans. ¶79.

15

50. In denying Ms. Quintero's request for a waiver, defendants did not speak to the medical professional who had certified that her disabilities prevented her learning English and Civics, or the Social Security Administration which had certified that Ms. Quintero was disabled. Hamilton Dep. 103-105, Quintero Declaration, previously filed on September 22, 1998 as Exhibit L to Plaintiffs' Notice of Filing. Nor did they ever request supplemental records from her medical files. Ans. ¶81. Neither did they have Ms. Quintero examined by any other medical professional. Hamilton Dep. 105.

51. At no time prior to or following their rejection of Ms. Quintero's medical waiver request did defendants provide her, her representatives or her family with the bases for the rejection or the fact that defendants' Miami District Office did not accept requests for medical waiver if the disability resulted from or was associated with advanced age or depression. Quintero Declaration ¶5. Nor did defendants ever publish these age related and depression standards in the Federal Register or otherwise provide them to the public.

### Sofia Pardo

52. Plaintiff Sofia Pardo is a 78 year old legal permanent resident who applied for citizenship in 1996. Ans. ¶11, 83. In connection with her citizenship application, Ms. Pardo submitted multiple requests for a medical waiver to excuse her from the English and Civics requirements of the naturalization examination. Ans. ¶87, 88, A-file of Sofia Pardo, Exhibit 9 to Plaintiffs' Notice of Filing submitted with this Motion. Her requests were based on attestations by physicians that she suffered from dementia, pre-senile dementia, and had scored poorly on two separate mini mental status examinations. A-file of Sofia Pardo.

53. Defendants denied Ms. Pardo's medical waiver requests because she suffered from

16

dementia, and in particular "senile dementia." Hamilton Dep. 139-40 and Hamilton Dep. Exhibit R; A-file of Sofia Pardo. Defendants considered Ms. Pardo's requests to be "age-related." Watson Dep. 205-206. Ms. Pardo was then denied citizenship because she could not speak English. Ans. ¶88.

54. In denying Ms. Pardo's request for a waiver, defendants did not speak to any of the medical professionals who had certified that her disabilities prevented her learning English and Civics. Hamilton Dep. 141. Nor did they ever request supplemental records from her medical files. A-file of Sofia Pardo. Neither did they have Ms. Pardo examined by any other medical professional. Hamilton Dep. 105.

55. At no time prior to or following their rejection of Ms. Pardo's medical waiver request did defendants provide her, her representatives or her family with the bases for the rejection or the fact that defendants' Miami District Office did not accept requests for medical waiver if the disability resulted from or was associated with advanced age (such as senile dementia). A-file of Sofia Pardo. Nor did defendants ever publish these age-related standards in the Federal Register or otherwise provide them to the public.

### Aura Consuegra

56. Plaintiff Aura Consuegra is an 86 year old permanent legal resident. Ans. ¶12, 91. She first applied to become a citizen in February, 1995 and again in March, 1997. Ans. ¶91, 93. In connection with her applications for citizenship, she has submitted four requests for a waiver of the English and civics examination. Ans. ¶92, 93, A-file of Aura Consuegra, Exhibit 10 to Plaintiffs' Notice of Filing submitted with this Motion.

57. Among Ms. Consuegra's requests was an attestation by an INS Civil Surgeon that

17

Ms. Consuegra suffers from cerebral dementia, organic brain syndrome, atherosclerosis and memory loss, as well as a certification by her doctor, a board-certified neurologist, that Ms. Consuegra has fixed multiple brain lesions, a brain tumor and severe memory difficulty, Ans. ¶92, 93, and a CT scan reading showing brain abnormalities. A-file of Aura Consuegra.

58. Defendants denied Ms. Consuegra's requests for a medical waiver. She was then denied citizenship because she could not speak English. Ans. ¶94.

59. Ms. Consuegra has since filed an appeal with yet another request for a medical waiver. She has received no decision on this appeal. Ans. ¶97, A-file of Aura Consuegra.

60. In denying Ms. Consuegra's requests for a medical waiver, defendants did not speak to any of the medical professionals who had certified that her disabilities prevented her learning English and Civics. Hamilton Dep. 104-105. Nor did they ever request supplemental records from her medical files. Ans. ¶95. Neither did they have Ms. Consuegra examined by any other medical professional. Hamilton Dep. 105.

61. At no time prior to or following their rejection of Ms. Consuegra's medical waiver request did defendants provide her, her representatives or her family with the bases for the rejection or the fact that defendants did not accept requests for medical waiver if the disability resulted from or was associated with advanced age. A-file of Aura Consuegra. Nor did defendants ever publish these age-related standards in the Federal Register or otherwise provide them to the public.

<u>Plaintiffs' Prior Requests to Defendants Under the Freedom of Information Act</u>

62. On August 14, 1998, acting on behalf of plaintiffs, plaintiffs' counsel requested that defendants provide all information available concerning the standards the Miami District Office

18

employed in deciding medical waiver requests and all medical waiver request decisions made by the Miami Office with the reasons therefor. Plaintiffs FOIA request letter to the INS dated 8/14/98, submitted contemporaneously with this Motion as Exhibit 11 to Plaintiffs' Notice of Filing.

63. The only response Plaintiffs ever received was an acknowledgement of the request with a control number. INS FOIA response letter dated September 3, 1998, submitted contemporaneously with this Motion as Exhibit 12 to Plaintiffs' Notice of Filing.

      Respectfully submitted,

      JoNel Newman, Esq.
      Peter M. Siegel, Esq.
      Randall C. Berg, Jr., Esq.

      Florida Justice Institute, Inc.
      200 South Biscayne Boulevard, #2870
      Miami, Florida 33131-2309
      (305) 358-2081
      (305) 358-0910 - facsimile

      Charles F. Elsesser, Jr., Esq.

      Florida Legal Services
      3000 Biscayne Blvd.
      Miami, FL 33137
      (305) 573-0092
      (305) 576-9664 - facsimile

      Joan Friedland, Esq.
      Cheryl Little, Esq.
      Lisette Losada, Esq.

      Florida Immigrant Advocacy Center
      3000 Biscayne Blvd.
      Miami, FL 33137
      (305) 573-1106
      (305) 576-6273 - facsimile

Attorneys for Plaintiffs

By: *JoNel Newman*
JoNel Newman, Esq.
Florida Bar No. 0112320

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed to Dexter A. Lee, Assistant U.S. Attorney, 99 N.E. 4th Street, Miami, FL 33131 and Teresa Wallbaum, Office of Immigration Litigation, U.S. Department of Justice, P.O. Box 878, Ben Franklin Station, Washington, D.C. 20044 on this 12th day of February, 1999.

By: *JoNel Newman*
JoNel Newman, Esq.
Florida Bar No. 0112320